[Civ. No. 4315.   Third Appellate District.—March 11, 1931.]

FLORA J. WILLIAMS, Respondent, v. JOHN FARIA
et al., Appellants.

James F. Peck for Appellants.

Edwin H. Williams for Respondent.

MR. JUSTICE PLUMMER Delivered the Opinion of the Court.—The plaintiff had judgment against the defendants for the sum of $2,050, based upon a complaint setting forth two causes of action. From this judgment the defendants appeal.

This first cause of action set forth in the plaintiff's complaint alleges the lease of certain lands and premises in Stanislaus County, whereby the plaintiff leased to the defendants the premises described in the complaint, and the defendants covenanted and agreed to set out, plant and have standing on said premises at least 40 acres in a first-class stand of alfalfa, "and to maintain the same in first-class condition, and to turn the ranch back to the owner upon the termination of said lease, with at least 40 acres of first-class alfalfa stand thereon, or otherwise, to pay to the owner $20.00 for each acre less than 40 acres which is not in first-class alfalfa stand".

After referring to the lease and making it a part thereof, the complaint further alleges that the defendants failed to put the demised premises in good order and condition; failed to clear the same of weeds, but allowed the same to become foul with noxious weeds, sand burrs, foxtail, etc., to the damage of the plaintiff in the sum of $1,000; and further alleges that the defendants failed to put on any portion of said premises or have on said premises a first class stand of alfalfa; that the defendants failed to establish any alfalfa whatever on said premises, to the further damage of the plaintiff in the sum of $800.

While the form of the lease is such that an action might have been prosecuted as and for liquidated damages, the record before us shows that it was not so prosecuted. The second cause of action set out in the complaint is one for damages based upon the destruction by fire of a certain silo and barn standing on the leased premises, it being alleged that the destruction by fire of said buildings resulted from the carelessness, negligence, etc., of the defendants, to the further damage of the plaintiff in the sum of $1600. In all, judgment for damages was asked in the sum of $3,400.

Two questions are presented to us for consideration upon this appeal, to wit: Whether findings "A" and "B" are

supported by the testimony. Finding "A" is to the effect that the defendants failed to set out and have standing upon said premises any marketable or first-class alfalfa, or stand of alfalfa whatsoever, to the damage of the plaintiff in the sum of $800. Finding "B" is to the effect that by reason of the carelessness and negligence of the defendants, a silo and large barn situated on said premises at the time the defendants took possession of, and occupied the same, were totally destroyed by fire, to the damage of the plaintiff in the sum of $1250.

▉ The contention of the appellants is to the effect that the action could only be prosecuted, in relation to the alfalfa, as one for liquidated damages, and that as the complaint does not set forth sufficient facts to sustain an action for liquidated damages, no cause of action is set forth as to said item. We do not find any merit in this contention. The fact that the parties entering into the lease did covenant to pay the sum of $20 per acre for each and every acre which they failed to set out and plant, and have standing in first-class alfalfa, in nowise limited the right of the plaintiff to sue for the actual damages resulting from the failure of the defendants to comply with the covenants of the lease to set out, and have standing the alfalfa upon the premises according to the agreement. The question of $20 damages per acre may be admitted to be void, as claimed by the appellants, but this does not bar the plaintiff from proving or attempting to prove, or the introduction of testimony tending to prove the actual damages suffered. ▉ While the testimony in the record is brief, it is to the effect that land in the district where the premises are situated, if covered by a first-class stand of alfalfa, is worth more than $20 per acre over and above land that does not carry such a stand of alfalfa.

It is further shown in the record that the rental value of lands covered with a first-class stand of alfalfa is worth more than land not so covered, to an extent greater than $20 per acre, which, applied to the covenant of the lease entered into by the defendants to plant, set out and have standing at least 40 acres of said premises, sustains an award of damages in the sum of $800. We do not need to quote the testimony as to the failure to establish a first-class stand of alfalfa because it is practically all to the effect that

the land is and was, at the time of the prosecution of this action, covered by foul weeds, sand burrs and Bermuda grass, and that no stand of alfalfa whatever was established by the appellants.

. Two elements enter into the determination of whether finding "B", as to the damages to the barn and silo, caused by fire, can be sustained—First: As to whether the appellants are chargeable with negligence for their destruction; second: As to whether there is any proof of the value of the silo and barn at the time of their destruction, and therefore, whether there is any proof of the damages sustained by the plaintiff for their destruction.

At the time of the fire, which occurred the latter part of May, 1928, the premises were in charge of an agent of the defendants named Silva, who, with his family, was residing upon the leased premises. According to his testimony dry grass, foxtails, weeds and other rubbish had been allowed to grow up and around the silo and barn and over a small tract of the leased premises adjacent thereto; that at about 2 o'clock on the afternoon of the fire he went out and hoed about 10 feet of the grass and weeds adjacent to the silo, and thereafter set fire to the weeds and dry grass upon the tract to which we have referred; that he so set the fire as to burn away from the silo and barn, and so as to cause the fire to travel in a northerly direction from the silo and barn; that he had supplied himself with buckets and wet sacks for the purpose of protecting the silo and barn from fire, and also to protect the residence in which he and his family resided, from being burned. If the court were to accept the testimony of the witness Silva, and to disregard the circumstances surrounding the fire and the atmospheric conditions testified to by others, then and in that case a judgment for the defendants, upon the second count in the complaint, might readily be sustained on the theory that no negligence is shown by the record. However, there is testimony of other witnesses to the effect that the wind was blowing from the north, which would carry sparks to the silo and barn. There is also testimony in the record to the effect that very strong winds are to be anticipated every afternoon, and that the prevailing direction of the winds in the San Joaquin Valley where this fire occurred is from the north toward the south. The testimony also shows

that no precautions had ever been taken to guard the silo and barn from fire by plowing around the same so as to kill or destroy or prevent the growth of noxious weeds adjacent thereto. The testimony is also entirely silent as to what Mr. Silva did to put out the fire after he discovered it in the silo, and also silent as to anything being done by his wife and children whom he stated were there ready to assist him. While the witness does state that he hoed a short space or area 10 feet in width on one side of the silo, it does not show that there was not sufficient rubbish left there to cause the fire to communicate with the silo. According to the testimony of the witness Silva, the fire started in the silo at the base thereof. True, the witness testified that about 15 minutes of 5 in the afternoon a whirlwind came up and carried burning rubbish to the silo and caused the same to become ignited. On the other hand, there is testimony of other witnesses who arrived shortly after the fire started to the effect that dry grass, weeds, etc., were burning in close proximity to the silo, and that the fire entered the silo through a decayed hole therein. The burning silo communicated the fire to the barn and caused its destruction. Witnesses who were present said that the wind, blowing from the north at the time of the fire, carried shingles from the barn at least a quarter of a mile. All of these circumstances taken in connection with the time of the year when the fire was started, sufficiently justified the trial court in coming to the conclusion that no reasonable precautions had been taken to prevent the burning of the silo and the barn prior to the time when Silva, the employee of the defendants, set fire to the dry grass, weeds, etc., adjacent thereto. From all of which we conclude that the charge of negligence and carelessness in the destruction of the silo and barn is sufficiently proven.

The contention of the appellants that there is no testimony in the record to support the finding of the trial court as to the value of the silo and the barn at the time of their destruction, appears to be well founded.

The reporter's transcript contains only the following testimony (so far as we have been able to discover it), relative to the value of the silo and barn: The witness E. H. Williams testified that he visited the premises either in January or February, 1928, preceding the month of May when the

fire occurred; that the barn and silo were then in good condition. A witness by the name of Rebman testified as to the reasonable cost of constructing a silo in 1928, of the dimensions described to him corresponding with the dimensions of the burned silo, and stated that it would cost $700. This witness likewise testified that the cost of constructing a barn of the size and kind described to him would, in 1928, have been the reasonable sum of $1600, and that the sum of $2,300 would be a reasonable sum to cover the costs of erecting a silo and barn of the dimensions described herein. It may be admitted, as contended by the respondent, that the barn and silo were in first-class condition in January, 1928, and it may be admitted that they were in such condition the latter part of May, 1928, there being no testimony one way or the other as to their condition. The facts are, however, that the barn was erected fifteen years preceding its destruction, and also that the silo had been standing for about eleven years, and there is not a single scintilla of testimony in the record relative to the depreciation of the silo and barn during that period of time.

Even though it be admitted, as contended by the respondent, that the dryness of the atmosphere, in the locality where the barn and silo were situated, is such that depreciation is slow, we cannot shut our eyes to the fact that a barn that has been standing for fifteen years, and apparently used during at least a considerable period of that time, has depreciated to a considerable extent, and the same must be true of a silo. There is not a word in the testimony indicating whether either of the structures had been protected from the weather by being kept painted or kept in repair, or any facts shown in relation thereto, save and except the opinion of one of the witnesses that they were in first-class condition.

The respondent has cited the cases of *Sickles* v. *Mt. Whitney Power Co.,* 177 Cal. 278 [170 Pac. 599], *Linforth* v. *San Francisco Gas & E. Co.,* 156 Cal. 58 [19 Ann. Cas. 1230, 103 Pac. 320, 322], and *Gosliner* v. *Briones,* 187 Cal. 557 [204 Pac. 19] to the effect that the cost of reconstructing destroyed buildings may properly be admitted in evidence. But none of these cases support the contention that such proof is adequate to sustain a finding as to the amount of the damages, as the following excerpt from the case of *Lin-*

*forth* v. *San Francisco Gas & Electric Co., supra,* sufficiently shows: "Evidence of the original cost of the building was admitted. Under the circumstances it was proper to do so. This evidence of original cost, standing alone, would of course have slight or no weight in determining the award of damages." This was used in relation to the reconstruction and repairing of a damaged building. In this case, as in the other cases cited, such evidence is admissible, but standing alone, is wholly insufficient.

In *Cleland* v. *Thornton,* 43 Cal. 437, an action prosecuted for damages caused to buildings by fire, evidence as to the cost of new buildings to replace those burned, was admitted. The court held that the evidence was admissible, not as affording a criterion of. damages, but merely as furnishing some data by which the court would be enabled to estimate approximately the value of the old building. The court said: "There was no error in the ruling of the court admitting the evidence as to the cost of new buildings to replace those which were burned. The evidence was admissible as furnishing some data by which the court would be enabled to estimate approximately the value of the old buildings, and it is evident from the opinion and order of the court that it was received and considered for this purpose only, and not as affording a criterion for damages."

Much confusion appears to have arisen by reason of the different views expressed by courts as to the proper method of ascertaining damages to property having no market value, and especially of buildings attached to the real estate. One method is that of ascertaining the value of the real estate before the destruction of the buildings, and the value of the real estate after their destruction. Other courts have sought to ascertain the value of the destroyed buildings separate and distinct from the real estate upon which they were erected. Some of the courts admit testimony as to cost of replacement; others, as to the original cost of the buildings.

In the case of *Kennedy* v. *Treleaven,* 103 Kan. 651 [7 A. L. R. 274, 175 Pac. 977, 978], these rules are considered, and in the annotations in this case may be found collected a large number of cases supporting the different methods adopted for ascertaining the value of destroyed buildings. In the case referred to the Supreme Court of Kansas thus

expressed its views: "There being no malice nor intentional wrongdoing, compensation is a proper measure, and hence, the defendant was liable for the reasonable value of the buildings burned at the time and place of destruction. There is no universal test for determining the value of property injured or destroyed, and the mode and amount of proof must be adapted to the facts of each case." After speaking of the rule relative to the original cost of the destroyed buildings, the court approves the following: "One method of arriving at such loss is by estimating the cost of replacing the buildings, less any depreciation from use, age or otherwise, and the other is by evidence of the value of the building at the time of its destruction, less the value, if any, of its ruins. . . . Evidence of the cost of the building, however, can hardly be said to be evidence of its value at a particular time."

The court likewise approves the rule laid down in 8 Ruling Case Law, 485, which is substantially as follows: "To arrive at the damages sustained, where the building burned had no market value, resort may be had to any facts which fairly tend to show its actual value when it was destroyed, and a permissible method of proof is by showing the cost of replacing the building, less any depreciation from age, use, utility or condition." This case is also to the effect that where a building has been standing for a great length of time, the original cost of the building is irrelevant. The majority rule, as shown by the annotations appended to the case of *Kennedy* v. *Treleaven, supra,* is to the effect that the cost of replacing the burned structure may be admitted, not as proof in and of itself as value, but may be considered in connection with testimony showing the age of the destroyed building, its depreciation, condition, use, etc., in determining the value of the destroyed building at the date of its destruction.

In the case of *Jennings* v. *Oregon Land Co.,* 48 Or. 287 [86 Pac. 367, 368], we find the following relative to testimony concerning the value of a building destroyed by fire, to wit: "Testimony as to its cost was therefore proper, not as of itself proof of value, but to aid the jury to arrive at an accurate conclusion in the matter and to enable them to test the worth of the opinion evidence on that subject." (Citing a number of cases.)

In the case at bar, as we have stated, there is no evidence whatever showing the extent of the depreciation of the destroyed buildings. There is, in fact, no evidence whatever as to their condition, except the expression of an opinion of one of the witnesses. There is no evidence whatever of the value of the buildings at the time of their destruction. The court in its findings fixed the value at $1250. There is not a scintilla of evidence in the record indicating that the figure fixed by the court was the value of the buildings at the time of their destruction. For all that the record shows, the finding of the court is based upon the mere expression of opinion of one witness, that the reasonable cost of replacing the silo would be the sum of $700, and the reasonable cost of replacing the barn would be the sum of $1600. The cases which we have cited, and the cases reported in the annotations found in 7 American Law Reports, beginning on page 277, are all to the effect that such testimony is insufficient to support a finding of the value of the destroyed building.

It follows from what we have said that the finding as to the damage suffered by the plaintiff by reason of the destruction of the silo and barn is not supported by the testimony, and that a retrial must be had as to this issue.

It is therefore ordered that as to all other issues involved in this action, the judgment will be, and the same is hereby, affirmed, and that as to the one issue, to wit, the damage suffered by the plaintiff by reason of the destruction of the silo and barn be and the same is hereby reversed, with directions to the trial court to proceed and determine the value of said buildings at the date of their destruction.

It is further ordered that neither party recover from the other costs of this appeal.