[Civ. No. 8372. Second Appellate District, Division Two.—July 23, 1934.]

BLANCHE DURAN, Respondent, v. PICKWICK STAGES SYSTEM (a Corporation) et al., Appellants.

B. P. Gibbs, Harry C. Lucas and Orla St. Clair for Appellants.

Arthur C. Webb and James MacIntosh for Respondent.

ARCHBALD, J., *pro tem.*—From a judgment entered on the verdict of a jury against defendants Pickwick Stages System and Pacific Greyhound Lines, Inc., in favor of plaintiff for damages for personal injuries alleged to have been sustained by her while traveling as a passenger on a stage owned and operated by defendant Pickwick Stages System, both defendants have appealed.

Plaintiff and her husband boarded a stage of defendant Pickwick Stages System at Los Angeles at about 12 P. M. on October 24, 1929, for El Centro. The stage went over what is known as Valley Boulevard, through Pomona, Ontario and Riverside and then over what is called the "Jack Rabbit" trail to Banning and on to Brawley, making many stops along the way. About two miles south of Brawley the driver, without any warning or indication of previous sickness observed by any of the passengers, turned around with a look of pain on his face, threw up his hands and fell over in the seat unconscious. The driverless vehicle angled from the right to the left side of the highway, off the road into a shallow ditch and up on the side of an embankment, where it turned over on its right side. Defendants in their answer denied negligence and pleaded unavoidable accident as a defense, but the jury evidently found against defendants on both issues.

The amended complaint alleged that between the date of the accident, October 25, 1929, and the filing of the complaint herein "defendant Pickwick Stages System, a California corporation, assigned, transferred and set over to defendant Pacific Greyhound Lines, Inc., all of its properties, assets, franchises and operating rights, and assumed all of the existing and contingent liabilities of the said Pickwick Stages System, a corporation, defendant herein". Such allegation was not denied. The evidence showed without contradiction that Pickwick Stages System owned and operated the stage herein mentioned at the time of the accident. At the close of plaintiff's case motions for nonsuit were made by defendants Pickwick Greyhound of California, Ltd., and Pacific Greyhound Lines, Inc., on the ground that the evidence failed to connect such defendants or either of them with the management or operation of said stage. The motion of Pickwick Greyhound of California, Ltd., was granted, but that of defendant Pacific Greyhound Lines, Inc., was denied. Such denial was based on the assumption that by failing to deny the allegation above quoted such defendant had admitted that it assumed the liabilities of its assignor, Pacific Stages System.

It is true that such failure to deny admitted the definite allegation that said Pickwick Stages System transferred all of its assets to the Pacific Greyhound Lines, Inc., but from such admission alone an agreement to assume and pay all of the existing and contingent liabilities of the Pickwick Stages System cannot be implied. (*Chase* v. *Michigan Tel. Co.*, 121 Mich. 631 [80 N. W. 717]; *Luedecke* v. *Des Moines Cabinet Co.*, 140 Iowa, 223 [118 N. W. 456, 32 L. R. A. (N. S.) 616].) It is urged, however, that the rest of the allegation, "and assumed all of the existing and contingent liabilities of said Pickwick Stages System", is an express allegation that the defendant Pacific Greyhound Lines, Inc., assumed such liabilities. The allegation does not so read. The subject of the latter phrase is "Pickwick Stages System", and the allegation is that such corporation assumed the liabilities of said Pickwick Stages System, not that the Pickwick Greyhound Lines, Inc., assumed them. We may admit that the pleader intended to say that the latter corporation made such assumption and agreement, and that as it stands the allegation is nonsensical, to say the least.

In our opinion, however, a defendant by the failure to deny a specific allegation admits what is alleged, not what the pleader had in his mind but failed to put into the allegation, however clear it may be that he intended to make such allegation. Any other rule would abrogate the law we now have that the complaint must contain a statement of the facts constituting the cause of action in ordinary and concise language, open the door to great carelessness in pleading and make a pleading sufficient if it appeared merely that the pleader clearly intended to allege certain things necessary to his cause of action although he did not do so, thus placing an impossible burden on a defendant, who would then not only have to deny the allegations contained in the complaint but as well any that might be necessary to make that pleading state a cause of action, if such contention is carried to its logical conclusion. The motion for nonsuit as to Pacific Greyhound Lines, Inc., should have been granted.

Unquestionably a *quasi*-public corporation cannot transfer its franchises and assets without legislative authority so to do (*City of South Pasadena* v. *Pasadena Land & Water Co.*, 152 Cal. 579, 583 [93 Pac. 490]), but such question is not involved here. Such a transfer might be void, but no agreement could be implied therefrom that the indebtedness of the transferor was assumed by the transferee. Nor would such assumption be implied even if the facts showed that the assets in the hands of the corporation receiving them remained subject to the debts of the transferor.

Certain testimony to the effect that the driver had been drinking from two to four hours prior to the time the stage departed and that certain witnesses smelled the odor of liquor on his breath immediately after the accident was admitted over the objection of defendants. There was no evidence at all that the driver was under the influence of intoxicating liquor, and the manner in which the evidence shows the stage was handled, not only on the level pavement but "up over the hill" on the "winding, curving piece of highway" known as the "Jack Rabbit trail", conclusively opposes any such suggestion. In our opinion, however, no prejudice could have resulted in the face of such evidence and by reason of evidence hereinafter discussed.

■ If there was no other negligence on the part of the driver of the stage than what could be implied from the fact that he suddenly lost consciousness and in consequence the control of his vehicle, we would agree with appellants' contention that the accident was unavoidable and that the evidence does not support the verdict. The evidence shows, however, that the driver "had been sick all the way down, feeling sick", and "had been fighting it off", but that it came on him suddenly and "I passed out suddenly". The driver also told a passenger that he had eaten some cucumbers for breakfast and that they poisoned him and caused his condition. He testified on direct examination, however, that he did not know what caused his collapse unless it was the result of a party in his apartment from two to four hours before he left, at which "we had a few drinks". It would seem, considering the high degree of care required of the driver of a stage containing passengers, that it was a question of fact for the jury to determine whether or not the action of the driver in continuing at the wheel of the stage, alone in the driver's compartment in the condition he was in, without advising someone of his condition and having someone there with him, constituted negligence. In our opinion there was evidence to support the conclusion that the accident was not unavoidable but was the result of the negligence of the driver for which the owner and operator of the stage was responsible.

■ The amended complaint having alleged negligence in general terms, it was perfectly proper, under the circumstances of the accident, for the court to give instructions to the jury embodying the doctrine of *res ipsa loquitur*.

■ In view of the fact that one day's jury fee was not deposited ten days prior to the date set for trial, as required by section 631 of the Code of Civil Procedure, it is contended that trial by jury was waived and that the court had no discretion to order it. Section 7 of article I of the Constitution provides that the right of trial by jury shall be secured to all and remain inviolate, "but *may be waived* in civil actions *by the consent of the parties, signified in such manner as may be prescribed by law*". The ten last quoted words "look to actual legislation upon the subject" (*Exline v. Smith,* 5 Cal. 112), and in section 631 of the. Code of Civil Procedure the legislature has set out the manner in which

the consent of the parties to such waiver may be signified. It is not only by express consent, but by one implied by law from the failure to do certain required things. At a very early day the Supreme Court held that the court "has the right, notwithstanding such waiver, to direct an issue of fact to be tried by the jury", and said that "besides this, it would not be presumed that any injury had accrued to the plaintiff in consequence of the issues of fact being tried by a jury instead of the court". (*Doll* v. *Anderson*, 27 Cal. 248, 251.) In the case of *Norland* v. *Gould*, 200 Cal. 706 [254 Pac. 560], deposit was not made as required by rule of court ten days prior to date of trial, and the trial court refused to grant a continuance and permit a jury trial, the court there saying: "We find no grounds for disturbing the exercise of the discretion of the trial court with reference to this matter," indicating at least that "discretion" was involved in making such denial. In the case of *Dickey* v. *Kuhn*, 125 Cal. App. 68, 72 [13 Pac. (2d) 834], the court said that "notwithstanding a jury had been waived in the statutory manner, it is within the discretion of the trial court to disregard the waiver and try the case by a jury", and that "the court did not abuse its discretion in so doing". A hearing of said cause in the Supreme Court was denied September 19, 1932. See, also, *Burbank* v. *McIntyre*, 135 Cal. App. 482 [27 Pac. (2d) 400], and *Nevin* v. *Mallon*, 136 Cal. App. 571 [29 Pac. (2d) 303].

In view of the foregoing it is our opinion that the purpose of section 631 of the Code of Civil Procedure is to grant the parties the right to waive a jury trial and not to impose conditions constituting an irrevocable waiver, and that the trial court may use its discretion in determining whether under the circumstances a waiver should actually be implied. No presumption exists that prejudice resulted from trial before a jury (*Doll* v. *Anderson, supra*), and a motion for new trial based on this contention was denied by the judge who saw the witnesses, heard the evidence and observed the jury, and we find nothing in the record indicating such prejudice.

A more serious question is whether or not the verdict of $10,000 was the result of passion or prejudice on the part of the jurors, rather than the exercise of an intelligent discretion which finds support in the evidence. Plaintiff did

not call in a doctor until her return home and did not receive even first aid treatment until such doctor came to her home about 7 o'clock on the evening of the day following the accident. The doctor so called testified that plaintiff was a "strong, healthy lady" prior to the accident; that when he examined her after being called in he found her "suffering from a severe pain in her neck and her right arm from the shoulder down and in the back, in the region of the twelfth rib, and in the region of the coccyx"; that there "were bruises on her body and she complained of pain in her head". He found an injury "at the coccyx" which he diagnosed as a fracture and treated. The twelfth rib was separated or pulled apart from the spinal column, and there was a fracture of the internal condyle of the right arm, which member was "put in a splint". The doctor also testified that he "strapped her right side for the fractured ribs with adhesive plaster from the pelvis up", and gave her some medicine for the pain; that he had not yet dismissed the case at the time of trial; that he made an examination of plaintiff before the trial and "found her very nervous", with "a marked callus over the region of the 12th rib", and "some thickening of the internal condyle on examination of the humerus of the right arm". It was his opinion that there was a permanent injury to the ulnar nerve, affecting the sensation and use of the fingers of the right hand, and that plaintiff might have pain and tenderness in her back from the rib injury "the rest of her life", due to pressure on the nerves and muscles of that region; that the "soreness on sitting" and need "to have a pillow", of which she complained, was likely to remain "unless there is a surgical operation performed, removing the coccyx"; that in his opinion "the chances are against her for a full recovery", based on "her present physical condition and also the length of time that has elapsed since she had the injury". Dr. Galvin, a witness for plaintiff, who was called into the case for consultation some weeks after the injury, testified as to the injury to the twelfth rib, the coccyx and the internal condyle of the right humerus, and that as a result of such fracture "she was getting some pressure on the ulnar nerve"; that "there was a quarter inch atrophy of the right forearm as compared with the left"; that "as far as the injury to the nerve was concerned, that depended entirely

on whether or not the pressure was relieved. If the pressure was not relieved she would be permanently disabled, as evidenced by changes of sensation and loss of power in her right arm''. This doctor felt that ''unless something was done in the way of an operation, that she would always have more or less pain and discomfort at the end of the spine'', and that ''as far as the ribs are concerned I felt at that time that that would come out all right''. There is other evidence from which the jury could conclude that plaintiff had suffered intense pain and had been unable to work since the time of the accident.

Dr. Ledyard, a witness for defendants, who examined plaintiff November 4, 1929, testified that her health on that date was ''comparatively good to what it is now''—a little more than two years after the first examination. There was other evidence conflicting seriously with some of the foregoing which indicated that the injuries were not nearly as serious as the above seems to show, and that plaintiff's condition at the time of trial, when apparently she had to be helped from the courtroom into the judge's chambers so that an expert could examine her at the request of defendants, was not due to the injuries resulting from the accident but to arthritis. In our opinion, however, such conflict was for the jury to determine and it did so adversely to such conflicting evidence, and a motion for new trial was denied by the judge who heard the evidence and saw the witnesses, to whom such adverse contention was addressed in the first instance.

In view of such evidence we cannot say that the judgment rendered is ''so plainly and outrageously excessive as to suggest, at the first blush, passion or prejudice or corruption on the part of the jury'' which we understand is the test to meet before an appellate court can hold the action of the trial court in denying the motion for a new trial to be erroneous and set aside the verdict of a jury. (*Hale v. San Bernardino Valley Traction Co.*, 156 Cal. 713 [106 Pac. 83].)

Judgment reversed as to appellant Pacific Greyhound Lines, Inc., and affirmed as to appellant Pickwick Stages System.

Craig, Acting P. J., and Desmond, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 13, 1934.