[Civ. No. 15111. Second Dist., Div. Two. May 27, 1946.]

ALPHONZO E. BELL CORPORATION (a Corporation), Appellant, v. K. L. LISTLE, Respondent

Overton, Lyman & Plumb and B. R. Ware for Appellant.

A. D. Haines, T. H. Canfield and John A. Westwick for Respondent.

MOORE, P. J.—Plaintiff sued to cancel an oil and gas lease by reason of the failure of defendant to resume drilling operations within the 60-day period following the service of notice of default. It demanded that its title be quieted and that it be restored to possession. Defendant denied plaintiff's right to possession, alleged that if she had defaulted her default had been cured within the 60 days and if not she had been prevented from so doing by the wilful acts of plaintiff. Those acts consisted of permitting defendant to continue drilling operations, of supplying her with fuel, oil and water and of encouraging her to spend substantial sums of money and that by reason thereof plaintiff was estopped from maintaining the action.

Upon the issues so framed a trial resulted in a judgment in favor of plaintiff as prayed. On appeal it was reversed by division three of this court (55 Cal.App.2d 300 [130 P.2d 251]) on the grounds (1) that while plaintiff's notice to defendant attempted to grant her 60 days after September 27, 1939, within which to cure her default, such time was not allowed, and that notice of forfeiture and of a termination of the lease was prematurely served on January 16, 1940; (2) that plaintiff's conduct estopped it from insisting that the time within which defendant might cure her default expired on December 26, 1939; and (3) that the court neglected to find that defendant had acted in good faith in resuming her drilling operations or that the latter were insufficient to remedy her default. The opinion reversing the first judgment is a lucid statement of the issues adjudicated at the former trial as well as the grounds of reversal.

## THE CROSS-COMPLAINT

Thereafter defendant filed her cross-complaint alleging (1) that drilling operations had commenced prior to August 15, 1939, as required by the lease; (2) that while notice of default was served on October 28, drilling operations were resumed in good faith on December 27; (3) that plaintiff made no immediate objection to such operations but on the contrary on December 27 notified defendant that the boilers were in need of repair and on threat of criminal prosecution forbade them to be used; (4) that despite defendant's activities to comply with lease requirements plaintiff mailed a notice of termination of the lease on January 16, 1940, but thereafter aided and abetted defendant by supplying water essential to her operations; (5) that defendant expended about $3,000 in connection with her renewed efforts to comply with drilling requirements; (6) that on February 23 plaintiff filed its action to quiet title and five days later ordered defendant, her servants, agents and employees off the premises with threats of arrest for those who remained; (7) that defendant has done all things required of her by the lease but at all times subsequent to February 28, 1940, plaintiff refused to allow defendant to enter the property; (8) that while she has been entitled to possession at all times, plaintiff evicted her on February 28 and still remains in exclusive possession; (9) that since the ousting of defendant by plaintiff the well drilled by defendant through neglect and disuse has been damaged in the sum of $35,000; (10) that following its reentry and possession of the property and while the lease was in full force and effect and defendant was entitled to peaceable possession and without her consent, plaintiff drilled a water well in close proximity to the oil well of defendant which had been drilled to a depth of 3,000 feet; (11) that as a proximate result of drilling the water well defendant's oil well has been irreparably damaged to defendant's loss in the sum of $35,000.

## ANSWER TO CROSS-COMPLAINT

To the cross-complaint plaintiff filed three affirmative defenses, the last of them being that at all times mentioned in the cross-complaint plaintiff has been and is the owner of the land described in the oil lease; that defendant has no interest in the property; that the lease provides that defendant will peaceably surrender possession of the premises upon expira-

tion of the lease; that defendant has neglected to prosecute diligently the drilling of the well commenced on August 15, 1939, or thereafter diligently to drill any additional oil wells as required by the lease; that pursuant to lease provisions notice of plaintiff's election to terminate the lease was duly served upon defendant and demand was made for a quitclaim deed which defendant has never delivered.

Following a second trial before a different judge it was found that drilling operations had been resumed diligently and in good faith and that by reason of its conduct plaintiff was estopped to assert a forfeiture as of December 27, 1939, after which day the lease was in full force and effect at all times. It was concluded that plaintiff take nothing (1) on its original complaint or (2) on its third affirmative defense to the cross-complaint, with respect to which issues a jury was waived. But pursuant to stipulation with reference to such waiver it was agreed that in event of the court's decision in favor of defendant all other issues should be submitted to a jury. They were so submitted, resulting in a general verdict for defendant in the sum of $25,000 and in special verdicts (1) that defendant did not abandon or surrender the lease and the well with intent not to pursue further development; (2) that defendant did not treat the acts of plaintiff as terminating the lease or her rights in the well or the property; (3) that the drilling of the water well was a proximate cause of injury to the oil well.

From the judgment based upon such verdicts plaintiff appeals.

### THE FINDINGS AGAINST PLAINTIFF ARE SUPPORTED

It will be borne in mind that plaintiff presented two claims as bases for quieting its title, namely, (a) its ownership, its lease containing restrictive covenants, defendant's violation of those covenants, her failure to cure her default and her continued occupancy, all alleged in the original complaint, and (b) the acts constituting its third affirmative defense to the cross-complaint which are recited above under "Answer to Cross-Complaint." It will not be gainsaid that the issues involving (1) defendant's election to treat the lease as terminated by reason of an alleged "constructive eviction," (2) her surrender of the lease and (3) her abandonment thereof were merely legal issues which in the exercise of a sound discretion the court was authorized to submit to a jury (Const., art. I, § 7; *Duran* v. *Pickwick Stages*

*System,* 140 Cal.App. 103, 108 [35 P.2d 148]) even though the stipulation waiving a jury trial had included those issues. (*Dickey* v. *Kuhn,* 125 Cal.App. 68, 72 [13 P.2d 834].) The court having determined pursuant to the waiver of a jury trial that the lease was in full force and effect at all times subsequent to February 23, 1940, subject to plaintiff's third affirmative defense, the final form of the judgment was to be determined by the verdict upon the issues raised by the third affirmative defense.

The evidence of defendant's right to continuous possession of the lease is as follows: The lessor having agreed to furnish the drilling equipment, fuel, oil and water and having required drilling to commence by August 15, 1939, the well was spudded on that day. The depth of 3,000 feet had been reached by September 27, when operations ceased. On October 28 plaintiff mailed its notice of cessation of operations and thereby demanded that drilling be resumed within 60 days. Operations did begin again on December 27 with plaintiff's acquiescence and active support. On January 16, 1940, plaintiff declared a forfeiture on the ground that defendant had not resumed drilling as required by the notice of October 28 and demanded a quitclaim. Defendant replied that she had resumed within the 60 days and was then engaged in prosecuting the development and that there was no ground for terminating the lease. No further steps were taken by plaintiff towards evicting defendant until February 23 when it filed suit to cancel the lease. In the meantime the boilers had been repaired at plaintiff's insistence, a packer had been set for a water shut-off and the hole had been swabbed. Such operations continued to February 28 when the order came for defendant and her employees to quit the property at once. Although all operations ceased on February 29 and all employees of defendant left the lease, defendant on March 1 wrote plaintiff denying termination of the lease, asserting its validity and declaring plaintiff would be held responsible for any injury to the leasehold caused by it. At no time thereafter did she yield her position but continued to assert the subsistence of her lease. Three days after departing from the well-site, with plaintiff's permission defendant cleaned out the plug in the tubing in order to leave the hole in good condition pending litigation. Upon proof of the foregoing facts, in view of the decision on the former appeal the trial court was warranted in holding that

defendant's lease had never been terminated, unless by her acts after February 23, 1940.

Neither did plaintiff make proof of any facts occurring between the first and the second trials that might show defendant to have surrendered or abandoned the lease prior to the second trial other than the continued desistance of defendant to occupy and develop the lease. It follows that the jury by its verdict correctly found that plaintiff had repudiated the lease and driven defendant from its land. The declaration of forfeiture of the lease on January 16, 1940; filing suit to enforce such declaration on February 23; plaintiff's demands on February 28 that defendant vacate the premises—all without first having allowed her the full 60 days to remedy her default—constituted a positive repudiation of the lease.

█ It is a principle firmly established by sound authorities (1) that when a lease has been repudiated by the landlord the lessee may sue for specific performance or for damages for the breach (*Buckmaster* v. *Bertram*, 186 Cal. 673, 678 [200 P. 610]), or (2) he may disregard the notice of forfeiture and base his action upon the continued subsistence of the lease and the wrongful attempt to terminate it. In an action based upon either theory he may recover such damages for the breach as would have arisen from the nonperformance of lessor at the appointed time (5 Williston, Contracts, §§ 1297, 3701), and lessor's repudiation if not withdrawn is a continuing excuse for lessee's refusal to perform. (*Ibid.*, § 1334.) If performance of the obligations imposed by a lease be prevented by the lessor the lessee is entitled to all the benefits which he would have obtained by the mutual performance of both parties (Civ. Code, § 1512), and the failure of the lessee to perform is excused when his performance is prevented by the lessor (Civ. Code, § 1511).

█ In the instant case the rights of defendant were protected until trial and judgment by the fact that despite plaintiff's repudiation the lease continued in force. (*Felton Chemical Co.* v. *Superior Court*, 33 Cal.App.2d 622, 627 [92 P.2d 684]; *Liver* v. *Mills*, 155 Cal. 459 [101 P. 299].) Therefore the contention of plaintiff that defendant was obliged to continue operations under the lease or to hold herself ready, willing and able to carry out its provisions cannot be maintained. If such contention were the law irremediable injuries could be perpetrated upon honest

lessees who may have invested large sums for purchase or rental of equipment essential to drilling operations, or who might have, on the strength of the oil lease, arranged a loan payable in progressive installments for the development of their mineral rights but who would be frustrated by expensive and extended litigation. If the rule prevailed as contended by plaintiff a lessee might with certainty be promptly and hopelessly despoiled of a fortune which by his explorations is shown to be within a short distance from the bottom of his drill stem. If it were the law that after a lessor has inequitably repudiated his lease the lessee must refrain from attempts to induce the lessor to abide by the lease and faithfully perform its covenants or hold himself in readiness to proceed, a penalty would thereby be placed upon honorable business dealings. (*Hadfield* v. *Colter,* 102 Misc. 474 [170 N.Y.S. 643, 650].) The law does not require a useless act. Any conduct or declaration of a promisor evincing a clear intention to treat his contract as no longer binding is a legal prevention of performance. (*Alderson* v. *Houston,* 154 Cal. 1, 11 [96 P. 884].) Where a lessor unequivocally notifies his lessee before the latter is in default that the lease is terminated and does not retract his notice but sues to quiet title against his lessee, the latter is entitled to enforce the contract without previously performing or offering to perform the obligations imposed upon him. (*California Canning Peach Growers* v. *Harris,* 91 Cal.App. 654 [267 P. 572]; *Shaw Wholesale Co.* v. *Hackbarth,* 102 Ore. 80 [198 P. 908, 201 P. 1066]; *Bu-Vi-Bar Petroleum Co.* v. *Krow,* 40 F.2d 488; Civ. Code, § 1440.)

That an unjustifiable declaration of forfeiture excuses performance by the lessee under an oil lease more readily than does the repudiation of other types of contract must instantly appear. The difficulties of drilling through thousands of feet of sedimentary rocks of varying degrees of hardness, of shutting off waters from water-bearing horizons, of keeping the drill in its perpendicular progress, of capturing and bringing to the surface substances of such migratory and volatile character as petroleum products, render highly valuable every moment of development or of delay in the development of an oil and gas lease. Also, the expense and uncertainty attendant upon the drilling of an oil well emphasize the justice of exempting the lessee from proceeding after litigation to cancel his lease has been instituted.

■ Contrary to plaintiff's contention a lessee's delay in drilling an oil well is not conclusive evidence of an intention to abandon or surrender the lease. Abandonment is a question of intention to be determined from all the facts. (*Hudspeth* v. *Schmelzer*, 182 Okla. 416 [77 P.2d 1123].) A declaration of forfeiture and a suit to enforce it being attacks upon the lessee's title are of such serious import and their successful prosecution is fraught with such far-reaching consequences that a lessee is at once relieved from further activity in the development of a lease. The results of drilling for petroleum products are in themselves so universally uncertain that injustice only could follow should the doctrine be applied that a lessee must continue to prosecute his drilling activities even after his title is threatened by an action to compel him to vacate the property. The complete desistance of a lessee who is innocent of default from prosecuting his contractual obligations to develop the oil and gas potentialities of the leased property is an appropriate and fair response to the lessor's hostile and unjustifiable attempts to cancel the lease. (*Consumers Gas Trust Co.* v. *Worth*, 163 Ind. 141 [71 N.E. 489] ; *Lieber* v. *Ouachita Natural Gas & Oil Co.*, 153 La. 160 [95 So. 538] ; *Ross* v. *Sheldon*, (Ky.) 119 S.W. 225; Merrill's "Covenants Implied in Oil and Gas Leases," p. 177.)

The jury having determined upon documentary evidence and the testimony of defendant's husband that defendant had neither abandoned nor surrendered her lease, and this court having already held that the lease was in force at all times, it logically follows that the judgment herein reaffirmed the existence of defendant's leasehold estate and all of her rights acquired by the lease. She was thereby immediately vested with a present interest in the land, an estate tantamount to a freehold (*Dabney* v. *Edwards*, 5 Cal.2d 1, 15 [53 P.2d 962, 103 A.L.R. 822] ; *Callahan* v. *Martin*, 3 Cal.2d 110 [43 P.2d 788, 101 A.L.R. 871]), and such estate includes a right to possess, enter upon and occupy the land. (*Callahan* v. *Martin, supra.*) Inasmuch as defendant did occupy the land and proceeded with a development program as required by the lease, the next step in the judicial logic necessarily followed, to wit, that plaintiff is not entitled to possession but defendant is, and the judgment upholding the defense that she was not in default is sufficient to establish her title to the lease. (*Mills* v. *Fletcher*, 100 Cal. 142 [34 P. 637].)

■ What of plaintiff's contention that its repudiation of the lease resulted in defendant's constructive eviction? Such is not the law. A unilateral repudiation of a lease by the lessor neither evicts the lessee nor terminates the lease. Such result would follow only the reciprocal and mutual agreement of both parties. (*Alderson* v. *Houston,* 154 Cal. 1 [96 P. 884].) Therefore, the lessor cannot by the mere announcement of his wishes terminate his contractual relations with his lessee. Before a lessee under an oil lease can be said to have forfeited his rights thereto after its repudiation by the lessor it must be shown that the former abandoned all plans to prosecute the drilling requirements. If he does not keep the lease alive by electing a remedy whereby to maintain his leasehold but on the contrary simply does nothing, he loses his rights, as was the result in *Rehart* v. *Klossner,* 48 Cal.App.2d 46 [119 P.2d 148], cited by plaintiff. But that case is not authority for plaintiff's contention that defendant's leasehold estate was terminated by plaintiff's ex parte repudiation. For six years Klossner did no work at all on the demised premises, although he was obligated by his lease to commence drilling by June 10, 1933. Having extended the time for commencement of operations to May 10, 1938, by payment of rentals, thereafter he neither paid rent nor proceeded with development although obligated to do so by August 10, 1938. He continued to do nothing after receipt of notice of his default on August 24. Suit was not filed until February 24, 1939, indicating extreme leniency on the part of lessor. His defenses (1) that performance was impossible by reason of a storm on the day he was served with notice of termination of lease and (2) that Mrs. Rehart's demand for a quitclaim constituted a repudiation came with poor grace under the circumstances. Judgment against him was the only deducible rational conclusion. The treatment of Klossner was in decided contrast with that accorded Mrs. Listle, who received not only notices and demands but was sued and driven from the scene of her explorations and heavy expenditures after she had within the time specified resumed drilling operations. Having been driven from the lease and subjected to legal action, defendant did all that was possible to keep the contract alive until the courts had adjudicated her demands. She resisted plaintiff's suit to quiet title from the inception of the action and prosecuted a successful appeal

from an adverse judgment. This together with her frustrated attempts to resume and continue drilling operations in December, 1939, kept her lease alive and she was thereby excused from having made no offer of readiness to do actual development work on the lease after February 28, 1940. (See *O'Connell* v. *Federal Outfitting Co.*, 5 Cal.App.2d 327 [42 P.2d 1070]; *McConnell* v. *Corona City Water Co.*, 149 Cal. 60 [85 P. 929, 8 L.R.A.N.S. 1171].)

It follows then that defendant was not obliged to offer performance or to continue to stand ready to perform the lease. After receipt of notices (1) of her duty to cure her default, (2) of the declaration of forfeiture, (3) of the suit to quiet title, and (4) of demands under threat of prosecution that she vacate the premises, defendant's right of action arose without more ado. At that time, however, her right consisted primarily in maintaining peaceable possession to the end that she might continue her drilling operations. While she might have renounced such right and instead have prosecuted an action for the profits she would have realized but for plaintiff's repudiation of the lease and prevention of lessee's performance (*Sobelman* v. *Maier*, 203 Cal. 1, 9 [262 P. 1087]), she chose to stand solely upon the fact that she was vested with a leasehold estate in the land. By having the leasehold restored to her she could thereafter develop the petroleum deposits and at the same time recover from plaintiff damages for loss of profits or injuries it may have done to the leasehold. This course she pursued by her affirmative defense and her cross-complaint, resulting in the pacification of her title and a recovery for the damages done by the trespass.

## No Error in Instructions Given or Rejected

Plaintiff assigns as error the rejection of two of its proposed instructions which were to the effect that in arriving at the amount of damage the jury should award "the sum which is equal to the difference in the fair market value of the leasehold estate and interest of the cross-complainant under her . . . lease as amended, immediately before the commencement of the drilling of the water well and immediately after the completion thereof; provided, however, that if the injury, if any, has been repaired or be capable of repair so as to restore the fair market value as it existed immediately before such injury, if any, at an expense less than such

difference in value, then the measure of damage is the lesser expense of such repair rather than such difference in value." In support of this assignment plaintiff cites *Salstrom* v. *Orleans Bar Gold Mining Co.*, 153 Cal. 551 [96 P. 292]; *Perkins* v. *Blauth*, 163 Cal. 782 [127 P. 50], and 7 A.L.R. 277. While the authorities support the text of the proposed instructions they are not in point in view of the rule according to which the court properly proceeded in prescribing the measure of the damages to be applied. ■ Contrary to plaintiff's contention neither the cross-complaint nor the theory upon which the case was tried is based upon constructive eviction. Defendant's pleadings and the theory upon which she based her right of recovery were that she was entitled to damages for a tort committed by plaintiff upon her property rights at a time when she was entitled to peaceable possession of her property. The mere fact that in the first count of her cross-complaint defendant alleges her eviction by plaintiff is not an admission that she was constructively evicted. The term as applied in such pleading signifies nothing more than that by its hostile acts plaintiff forced her to absent herself from the premises on which she had drilled the hole. However, in the second count of her pleading her language alleges only that while her lease was in force the plaintiff, without defendant's permission, "entered upon the leasehold premises and drilled . . . a water well in close proximity to the oil and gas well. . . ." Neither is the fact that plaintiff was landlord material. That it had done her wrong was the crux of the case.

■ That she kept the contract in force by asserting her right to retain possession and to drill her well entitled her to the instruction that the jury should not "consider whether or not the said oil and gas well has produced or would produce oil in paying quantities or if deepened would or would not produce oil in paying quantities; but in arriving at the amount of damage, if any, you should determine and award as damages the amount reasonably necessary to now place cross-complainant Listle in the position she would have occupied had the damage, if any, not occurred. This amount should be a sum reasonably required to repair such damage, if any, if such damage can be repaired, or if it cannot be repaired then such reasonable sum as will be necessary to replace the oil well hole with one in all practical respects similar to the oil well hole as it existed before the damage, if any." There

was neither error in the instructions given nor in the rejection of the instructions proposed. The measure of damages suffered by reason of a tortious act is the amount which will compensate for all the detriment proximately caused thereby whether it could have been anticipated or not. (Civ. Code, § 3333.) For such wrongs damages will be awarded to the extent that the injured party will be restored to the position he would have occupied had the trespass not occurred. (*Cassin* v. *Cole*, 153 Cal. 677, 679 [96 P. 277]; *Foley* v. *Martin*, 142 Cal. 256 [71 P. 165, 75 P. 842, 100 Am.St.Rep. 123].)

While the general rule for ascertaining damages to real property injured or destroyed by a trespass is to prove its diminution in value resulting from the wrongful act (*LeBrun* v. *Richards*, 210 Cal. 308, 319 [291 P. 825, 72 A.L.R. 336]; *Green* v. *General Petroleum Corp.*, 205 Cal. 328, 336 [270 P. 952, 60 A.L.R. 475]), yet there is no universal test for determining such sum. (*Williams* v. *Faria*, 112 Cal.App. 455 [297 P. 78].) One method is by estimating the cost of replacement of improvements. (*Green* v. *General Petroleum Corp.*, *supra*; *Williams* v. *Faria*, *supra*.) But in view of the doubt as to the correct measure where the injuries affect the entire freehold as well as the value of separate structures thereon, care must be exercised in selecting the rule as to the measure of damages applicable in any given case. (*Hancock* v. *George R. Curtis Paving Co.*, 114 Cal.App. 624, 628 [300 P. 65].)

However, the defendant is not forced to rely upon the familiar principles declared by the foregoing authorities. In an action where the probative facts closely parallel those of the case at bar the Supreme Court of Oklahoma set at rest the contention that proof of damage to the owner of a prospect hole in a producing oil field cannot be made for the reason that no value of the well or of the prospective profits to be derived therefrom can be established, "since no one could tell whether, if drilled to completion, oil and gas would be found, and if none were found, the hole was of no value." The court held that the action was not for prospective profits nor for the value of an oil well, but for the value of the prospect hole rendered worthless by the negligent acts of defendants. The owner of land or of a leasehold may expend his own money in drilling a prospect hole to any depth. That the venture may result in a total loss to him is not a defense on behalf of the wrongdoer. (*North Healdton Oil & Gas Co.*

v. *Skelly*, 59 Okla. 128 [158 P. 1180].) ▆ The measure of damages to be assessed for destroying a prospect hole for oil and gas is the amount of money necessary to redrill the well to the horizon at which the destruction occurred. (4 Thornton Oil and Gas, § 1279.)

### No Error in Admitting Evidence of Cost of Well

▆ The assignment that the court erred in overruling plaintiff's objection to the defendant's proof of the cost of drilling another well is disposed of by the North Healdton decision. The case of *Johnson* v. *Hinkel*, 29 Cal.App. 78 [154 P. 487], cited by plaintiff, is not pertinent. It was an action for breach of contract. The wrongful destruction of the hole was not involved. By a recovery of the cost of replacement Johnson would have recovered more for the breach than from a complete performance. Not only had the hole been abandoned but it was situated in nonproductive desert land.

The hole drilled by defendant herein was in an active oil field only 2,500 feet from a producing property. Presumptively she had expert advice as to the lay of the structure, her husband having drilled a producer in the same vicinity, and the testimony was that the formations encountered in the two wells were "practically identical." Having the unrestricted right to explore her lease for 20 years and until oil and gas were no longer to be found in paying quantities, she was at liberty to exercise her own discretion and judgment as to the locus of a hole to be drilled and to risk her wealth upon her own ventures. Neither upon any theory that has been proposed nor upon any authorities cited may the defendant without compensation be deprived of the right of enjoyment of a valuable property right, to wit, the right to possess a hole drilled 3,000 feet over an oil bearing structure on her own leasehold and the right to peaceable possession of the lease, so long as she is not in default.

The judgment is affirmed.

McComb, J., and Wilson, J., concurred.

A petition for a rehearing was denied June 13, 1946, and appellant's petition for a hearing by the Supreme Court was denied July 24, 1946.