[Civ. No. 7799.   Third Dist.   Nov. 15, 1950.]

E. I. LANE et al., Respondents, v. SIDNEY F. SPURGEON et al., Appellants.

McAllister & Johnson, Frank H. McAuliffe and Walter C. Frame for Appellants.

S. C. Young, Bertram D. Janes and Rowland & Craven for Respondents.

VAN DYKE, J.—Plaintiffs and respondents brought this action to recover damages for alleged breach by defendants of contractual obligations contained in a certain lease and supplemental agreements. Respondents were the owners of property known as Buck's Lake Lodge in Plumas County and leased the property, together with the improvements and personal property used in the operation thereof, to the appellants. By the terms of the lease appellants were required to keep the improvements and personal property in good order, condition and repair, and to replace all that might be lost, stolen, destroyed or otherwise rendered not appropriately usable during their tenancy, all to the end that the same might be at all times available for use in running the resort in the same manner as it had been theretofore conducted. A supplemental agreement was thereafter executed in connection with the proposed surrender of the property whereunder the respondents agreed to make adjustment for any shortage of property leased to them. Claiming these covenants had been breached when the property was turned back, respondents filed this action. By the first count in the complaint they sought to recover expenditures they had been put to for labor and material to repair the main water line serving the lodge and the plumbing and fixtures in the various buildings. By the second count they sought to recover a sum alleged to be the value of furniture and equipment leased and not redelivered or redelivered in such condition as not to be appropriately usable. By the third count they sought to recover the value of four boats leased and not redelivered, stock in trade not made good and for wood consumed and not replaced. By the fourth count they sought to recover for shortage in inventories.

Appellants answered, denying generally that they had breached their said obligations. Upon demand a bill of particulars was furnished by respondents wherein the recoveries sought were broken down as follows: Cost of repairing main water supply, cost of repairing plumbing in buildings, labor and material for repairing and replacing electrical equipment damaged beyond use, equipment delivered to defendants and

either not returned or returned in unusable condition, a shortage in equipment and shortage in stock in trade.

The case was tried and the court adopted findings in respondents' favor, granting a total judgment of $4,341.17, from which judgment this appeal is taken.

It is appellants' contention that the proper measure of damages was not applied and we think in some respects this contention must be sustained. After evidence had been given by respondents that certain articles of personal property had not been delivered or delivered in such condition that they were useless, proof was introduced as to the expenditures made by respondents in buying other articles in replacement and without any additional evidence as to the value of the articles not redelivered or redelivered in unusable condition, the cost of the replacement articles was assessed against appellants. This was not the proper measure of damages.

■ As a general rule the measure of damage for the loss or destruction of personal property is the value of the property at the time of such loss or destruction. In *Smith* v. *Calley*, 103 Cal.App. 735, 737 [284 P. 974], quoting from 8 California Jurisprudence, page 814, the court said:

" 'Under section 3333 of the Civil Code, the measure of damages for the destruction of personal property is the value of the property destroyed. Its cost is not the standard, nor is money expended in replacing it. The detriment caused by the injury or partial destruction of personal property is the difference in value immediately before and after the injury, provided that if repairs can be effected for a smaller sum, that sum becomes the limit of recovery.' "

■ There appears to be no different measure applied where a lessee breaches a covenant to return the premises at the end of the term in substantially the same condition as when received. ■ Independently of express covenant a lessee is under an obligation imposed by law to return leased property in good condition, normal wear and tear excepted. (51 C.J.S. 1156.) In *Kaye* v. *M'Divani*, 6 Cal.App.2d 132 [44 P.2d 371], where the lease provided that the lessee would "deliver up the entire possession of said House, Furniture, Goods and Chattels, unto the said party of the first part, . . . in as good state and condition as the same are now in, ordinary wear and tear and damage by fire alone excepted," the court compared the liability of the lessee to that of a bailee and while the measure of damages was not a direct issue in the case the court allowed market value for loss of a valuable rug.

In *Williams* v. *Faria,* 112 Cal.App. 455 [297 P. 78], where a barn and silo were destroyed by fire during the lessee's term this court held proof of the cost of reconstructing the destroyed buildings was not adequate to sustain a finding as to the amount of damages. The only testimony given was as to the cost of replacing the barn and silo, and while the whole amount thus testified to was not given the court held that there was nothing to support the lower figure fixed by the court as the amount of damages suffered. The court said, at page 460:

"The facts are, however, that the barn was erected fifteen years preceding its destruction, and also that the silo had been standing for about eleven years, and there is not a single scintilla of testimony in the record relative to the depreciation of the silo and barn during that period of time."

So in this case the testimony was that the articles under discussion had all been subjected to years of use. It certainly cannot be said that used rowboats, water heaters, outboard motors, electric motors, towels, sheets, pillows and pillow cases which were in used condition when taken by the lessees would not have suffered substantial depreciation even though the articles had been kept in good repair.

The only evidence given on the question of damage suffered on account of the breach by appellants of their obligations with respect to these articles was that of one of the respondents who merely testified as to what it cost to replace them with new articles. This evidence does not sustain the court's findings that by the breach of their obligations the appellants damaged respondents in the sums allowed.

The difficulty of making proof is argued by respondents as justifying the application of the measure of damages used by the court, but we fail to see wherein the case presented any unusual difficulties in that regard. All of these articles were articles commonly used in the running of mountain resorts. Respondents were owners of the articles and could testify as to their value as such and furthermore must have been acquainted with the rate of depreciation of articles so commonly used in their business. Other owners of mountain resorts where these articles are used under like conditions of use and weather could also have testified to these matters, and so the difficulty of proof does not aid in the sustaining of the findings on the items of damages we are discussing.

Respondents also argue that the conditions existing at the time when the obligation to return arose, which was just shortly before the resort was to open for a summer season, also

justified the application of the measure of damages used by the court. We cannot sustain this contention either. They say that the respondents were entitled to have the whole of the leased property turned back to them in condition for its continued and immediate use in a going business; that time did not serve for going about in an attempt to obtain used articles comparable to those under discussion. This may be true, but while respondents were entitled to have these articles returned in the condition agreed upon they were not entitled to have new articles in their place. That would be to more than make them whole and cannot be allowed. ▮ Respondents also argue that had not respondents acted promptly in obtaining articles in substitution they would have been unable to open their resort at the usual time and would then have been able to hold appellants for damages through loss of profits. We fail to see where this argument is sound so far as the measure of damages be concerned. Furthermore, no such elements of damage were pleaded by respondents nor was the case tried upon the theory that they existed; and no evidence was taken from which the court could have found such damage.

What we have said is applicable solely to those items of personal property grouped together under the designation of equipment delivered to the lessees and either not returned or returned in unusable condition. ▮ As to the damages allowed for cost of repairing the water supply line and plumbing and plumbing fixtures, for labor and material in replacing the electrical equipment, for shortage in equipment which in taking over the property the appellants had agreed to sell to respondents, and for the claimed shortage of stock in trade we are satisfied that the damages allowed by the court are fully supported by the evidence.

Appellants make further contentions which we will now discuss. They contend that, by reason of the circumstances attending the turning back of the property, respondents have twice collected the damages they sought here to recover. The salient facts underlying these contentions are these: The lease had not terminated when the parties began negotiating for its termination in advance of the expiration date. Appellants had certain property of their own which they had brought to the premises and had used in running the resort. They submitted a proposal to respondents that they would give up their lease and would transfer this personal property owned by them to respondents for a price exceeding $14,000. Re-

spondents replied to this proposal, stating that such investigation as they had been able to make indicated that there were a great many articles belonging to respondents which were missing, and that articles which appellants were proposing to sell to them were likewise missing. They proposed a lower figure which was in excess of $10,000. Thereafter the parties executed an agreement concerning the turning back of the premises and the sale of personal property which recited the desire of respondents that the lease be surrendered, and the agreement of appellants to surrender the same. In addition thereto appellants agreed to turn back all of the personal property belonging to the respondents. They also agreed to sell to respondents all personal property owned by appellants and which appellants had used in connection with the running of the resort excepting certain distilled spirits, beer and wine. The stipulated cash consideration was the payment as of the date of the agreement to appellants, of the sum of $10,000. It was agreed that a further sum of $817.56, the remainder of the cash consideration, would be withheld until the personal property leased should have been returned and redelivered to respondents and until respondents should have received the property being sold to them by appellants. It was expressly stated that the respondents could deduct from the withheld balance a sum equal to the cost of any items not returned and a sum equal to the value or the cost of any property which appellants agreed to sell and which they did not deliver. A definite delivery date was fixed in the agreement. Thereafter appellants sought to take from the premises the personal property they had reserved and at that time complaint was made by respondents that a great many articles had not been found or found in such condition as to make their use impossible. A further agreement was made which stated that the appellants would make all and any adjustments for any shortage in the inventory of personal property furnished and sold to them or leased property not returned.

As to this last agreement appellants contend that the same was executed under duress and as a condition of their being permitted to take their reserve property and was therefore void, but upon this point the evidence before the trial court was conflicting; the trial court found against their contentions and that finding is properly supported.

But appellants further argue that the purpose and intent of the prior agreement, when considered in the light of negotiations leading up to it, that is the proposal and counter-

proposal we have referred to, was to settle and adjust all differences for the price at which the turnover should be made and that to permit recovery thereafter for articles not returned or returned in unusable condition would permit a double recovery. We think this contention cannot be sustained. The findings of the trial court are against it and when the agreements are all construed together, as they should be, we think the court's decision involved factual matters concerning the proper construction of the documents executed and cannot be and ought not to be here disturbed.

■ For the reasons we have given, the judgment here appealed from cannot be wholly affirmed. However, it is neither necessary nor just to remand the cause for trial as to all issues since we are satisfied that with the exceptions hereinbefore mentioned the judgment is correct and properly supported by the record. (*Williams* v. *Faria, supra,* p. 463.) The cause is remanded for further trial as to the issue of damages only, suffered by respondents in the matter of nonreturn or improper return of articles grouped in the bill of particulars under the heading: "Equipment delivered to plaintiffs and either not returned at all or returned in unusable condition," the inquiry to extend no further than the reasonable value of such articles as of the time when and in the condition in which they should have been delivered, which date is fixed by the supplemental agreement above referred to as being April 1, 1947. In all other respects the judgment is affirmed. Appellants will recover costs on appeal.

Adams, P. J., and Peek, J., concurred.