Rodney ROBINSON, Linda Robinson, and Daniel Timko, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. Civ. S–00–1628FCDPAN.

United States District Court, E.D. California.

Nov. 20, 2001.

Darin P. Wright, Lewiston, CA, for Plaintiffs.

John K. Vincent, U.S. Atty., Kendall J. Newman, Asst. U.S. Atty., David T. Shelledy, Asst. U.S. Atty., Sacramento, CA, for Defendants.

## MEMORANDUM AND ORDER

DAMRELL, District Judge.

Plaintiffs Rodney Robinson, Linda Robinson, and Daniel Timko (collectively referred to as "Plaintiffs") brought an action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 through 2680 against Defendant United States of America ("the Government"). Plaintiffs allege that agents and employees of the Government negligently allowed a prescribed fire started on the Government's property to escape onto the property occupied by the Plaintiffs, thereby causing Plaintiffs to suffer emotional distress and damages to their personal property. This matter is before the court on cross-motions for Summary Adjudication of Issues pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] The Government seeks an order

---

1. Plaintiffs did not originally file a Motion for Summary Adjudication. However, the parties have stipulated that Plaintiffs' Opposition to Defendants' Motion for Summary Adjudi-

from this court that Plaintiffs are not entitled to emotional distress damages as a matter of law and that the proper valuation of Plaintiff's personal property allegedly damaged is market value. The Plaintiffs seek a determination that they are entitled to emotional distress damages as a matter of law and that the proper valuation of their damaged or destroyed personal property is peculiar or sentimental value. For the reasons set forth below, this court finds that the Plaintiffs are not entitled to recover emotional distress damages and that the proper valuation of Plaintiffs' personal property is market value. Defendant's motion for summary adjudication will be granted and Plaintiff's cross-motion for summary adjudication will be denied.

## BACKGROUND

On July 2, 1999, the Bureau of Land Management ("BLM"), a division of the United States Department of the Interior, started on government property, which is commonly known as "Lowden Ranch," a prescribed burn in order to rid the area of noxious weeds. The Government's agents attempted to control and contain the fire. Nevertheless, as a result of the negligence of the Government, the fire spread beyond Lowden Ranch and spread over 2,000 acres. Eventually, the fire consumed 23 houses in and around Lewiston, California (including residence occupied by the Plaintiffs as leasehold tenants), damaged dozens of other properties, and generated more than 350 claims for compensation under the FTCA.[2]

Plaintiff Daniel Timko, the son of Plaintiff Linda Robinson and stepson of Plaintiff Rodney Robinson, was seventeen years old and resided with his mother and stepfather at the time of the fire. Timko was at a location two miles from the Plaintiffs' home when he learned of the fire. Upon learning of the fire, Timko drove back to the Plaintiffs' home, passing through an area where he saw embers falling on the road. After Timko arrived home, Plaintiffs were informed by a local law enforcement officer that they had ten minutes to gather their belongings. After receiving this advisory, Plaintiffs gathered some belongings before evacuating their property.

After Plaintiff Rodney Robinson evacuated his home, he returned to his home in order to attempt to save a car in the garage from the fire. The fire resulted in severe damage to real and personal property possessed by the Plaintiffs, including destroying their house, pool, shop, other outbuildings, and acres of landscaping. Plaintiffs were not physically injured as a result of the fire nor did they see a close relative physically injured.

cation should be treated as Plaintiffs' Motion for Summary Adjudication.

2. There are three other cases related to this case: *Myers v. United States; Ehret v. United States;* and *Templeton v. United States.* The instant case, the three aforementioned related cases, and eleven other cases are all scheduled for trial in August 2002. Plaintiffs in all of these cases assert damages resulting from destruction to their real and personal property as a result of the fire started on Lowden Ranch. Plaintiffs in all of these cases, and approximately 100 others yet to be filed, are all represented by the same counsel. All parties anticipate that the legal issues raised in this case will also be relevant to the related

cases and eleven other cases, and are likely to be relevant to the cases that have yet to be filed.

Since the escaped fire injured the properties of so many people, including the Plaintiffs, it clearly fits the definition of a mass tort, defined as a "civil wrong that injures many people." Black's Law Dictionary 1497 (7th ed.1999). Examples of mass torts include toxic emissions from a factory, the crash of a commercial airliner, and contamination from an industrial-waste-disposal site. *See id.* The court, and the parties, believe that resolution of issues in Plaintiffs' case will also assist resolution of similar issues in the fourteen related cases and 100 cases yet to be filed.

Plaintiffs claim that they have suffered emotional distress resulting from (1) fear for their own safety during the fire; (2) fear for the safety of family members whose whereabouts were unknown during and immediately after the fire; (3) loss of real property they possessed as leasehold tenants; (4) loss of personal property, including items in which Plaintiffs placed great personal value; and (5) the manner in which the Government has questioned, disputed, and refused to pay their claims. Plaintiffs also claim that damages for certain items of personal property which were destroyed as a result of the fire. These items of personal property include items in which Plaintiffs placed a great deal of sentimental value. For example, one of these items is a wedding dress which had belonged to Plaintiff Linda Robinson's grandmother. Other destroyed items include Little League trophies, school art projects, and Plaintiff Linda Robinson's diary. While some of the destroyed items for which Plaintiff is claiming damages have a market value, others have little or no market value.

## STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). One of the principal purposes of the rule is to dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). If the moving party does not bear the burden of proof at trial, he or she may discharge his burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. Once the moving party meets the requirements of Rule 56 by showing there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Genuine factual issues must exist that "can be resolved only by a finder of fact, because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505. In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. *See T.W. Elec. v. Pacific Elec. Contractors Assn.*, 809 F.2d 626, 630–31 (9th Cir.1987) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). The evidence presented by the parties must be admissible. Fed. R.Civ.P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Falls Riverway Realty, Inc. v. City of Niagara Falls*, 754 F.2d 49, 57 (2d Cir. 1985); *Thornhill Publishing Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## ANALYSIS

■ Plaintiffs brought this action against the Government under the FCTA. The FCTA provides, "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circum-

stances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674. The FCTA serves as a limited waiver of sovereign immunity allowing the Government to be held liable in tort to the same extent as a private individual. Since the acts complained of in this case occurred in California, the applicable tort law is California tort law.

Plaintiffs assert two causes of action—negligence and trespass. Plaintiffs seek damages for emotional distress arising out of both negligence and trespass and damages for personal property.

The Government admits that its negligence caused the fire to escape from Lowden Ranch. However, the Government contends that Plaintiffs are not entitled to emotional distress damages. First, the Government argues that California Health & Safety Code §§ 13007 and 13008 limit Plaintiffs' recovery to damages to property alone. Second, the Government contends that even if sections 13007 and 13008 do not provide such a limit on Plaintiffs' recovery, Plaintiffs are cannot recover for emotional distress arising out of trespass absent intentional wrongdoing. Thirdly, the Government claims that the Plaintiffs are not entitled to emotional distress damages under any of the theories for liability premised on negligence.

Plaintiffs argue that the proper valuation of their destroyed personal property is the peculiar value placed upon these items by the Plaintiff. The Plaintiff claims that it should be able to offer evidence of this peculiar value at trial.

The Government contends that the proper valuation of Plaintiffs' personal property that was destroyed in the fire is market value.

### 1. California Health & Safety Code §§ 13007 and 13008

■ As an initial matter, this court must determine whether California Health & Safety Code §§ 13007 and 13008 limit Plaintiffs to recovery for damages to property only.[3] The Government contends that sections 13007 and 13008 do place such a limit on Plaintiffs' damages. The Plaintiffs say that these code sections are not meant as a ceiling on damages resulting from an escaped fire but, rather, as a floor.

Plaintiffs argue that California law treats statutory remedies like sections 13007 and 13008 as additions, rather than deductions from, Plaintiffs' general protection against negligent harm provided for in California Civil Code section 1714.[4] Plaintiffs maintain that nothing in either section explicitly precludes them from pursuing personal injury claims against defendant. Furthermore, they state that the Legislature only intended to remove penalties associated with negligent escaped fire cases by limiting plaintiffs to actual damages.

---

**3.** California Health and Safety Code sections 13007 and 13008 read as follows:

Any person who personally or through another wilfully, negligently, or in violation of law, sets fire to, allows fire to be set to, or allows a fire kindled or attended by him to escape to, the property of another, whether privately or publicly owned, is liable to the owner of such property for any damages to the property caused by the fire.
Cal. Health & Safety Code § 13007.

Any person who allows any fire burning upon his property to escape to the property of another, whether privately or publicly owned, without exercising due diligence to control such fire, is liable to the owner of the property for the damages to the property caused by the fire.
Cal. Health & Safety Code § 13008.

**4.** California Civil Code section 1714(a) reads: "[e]very one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person." Cal.Civ.Code § 1714(a).

Nothing in either statute expressly limits an injured party's recovery to property damage only. The Ninth Circuit addressed this issue indirectly when it stated in a footnote that "[t]here is nothing in the law of California to suggest that ... §§ 13007 and 13008 so limit California Civil Code § 1714(a)." *Anderson v. United States*, 55 F.3d 1379, 1384 n. 5 (9th Cir. 1995). Such a rule would be unconscionable, because it would bar recovery for personal injury by a plaintiff who was injured during the course of a fire that damaged his or her home. *See id.* *Anderson* involved a suit by property owners against the United States for injuries they suffered when a prescribed fire in a national forest escaped and burned part of a residential neighborhood. *Id.* at 1380. The plaintiffs sought recovery under the Federal Tort Claims Act (FTCA) for damages caused by the fire. *Id.* Although *Anderson* dealt with the defendant's liability under the FTCA for negligently setting the fire, the court indicated that it would not limit the plaintiff's recovery to property damages only. *Id.* at 1384 n. 5. The court found that California treats statutory remedies "as additions rather than deductions from plaintiffs' general protections against negligent harm." *Id.*[5] Thus, sections 13007 and 13008 should not be read as limiting plaintiffs' recovery to property damage only, absent any express language in the statutes.

■ Similarly, the California Supreme Court held in *Rojo v. Kliger*, 52 Cal.3d 65, 276 Cal.Rptr. 130, 801 P.2d 373 (1990) that "[t]he general rule is that statutes do not supplant the common law unless it appears that the Legislature intended to cover the entire subject." *Id.* at 80, 276 Cal.Rptr. 130, 801 P.2d 373. Furthermore, "where a statutory remedy is provided for a preexisting common law right, *the newer remedy is generally considered to be cumulative*, and the older remedy may be pursued at the plaintiff's election." *Id.* at 79, 276 Cal.Rptr. 130, 801 P.2d 373 (emphasis added). In the instant case, Plaintiffs brought this action against the Government under the common law theories of trespass and negligence. Since Plaintiffs have asserted rights under the common law, the statutory remedies provided by sections 13007 and 13008 will be read as supplementing rather than supplanting Plaintiffs' recovery under the common law. Therefore, sections 13007 and 13008 do not prohibit Plaintiffs from suing for damages in addition to property loss.

The Government cites a California appellate court case with a different fact pattern than this case to support the proposition that sections 13007 and 13008 limit Plaintiffs' recovery to damage to their property. *City of Los Angeles v. Shpegel–Dimsey, Inc.*, 198 Cal.App.3d 1009, 244 Cal.Rptr. 507 (Cal.Ct.App.1988). In that case, the plaintiff city attempted to recover damages for destruction of its property and firefighting costs under sections 13008 and 13009, respectively, of the Health and Safety Code. *Shpegel–Dimsey*, 198 Cal. App.3d at 1019, 244 Cal.Rptr. 507. The court found that since the city sought a remedy provided by statute, the city's recovery would be strictly limited by the language of the statute. *Id.* at 1019–20, 244 Cal.Rptr. 507. Therefore, since Plaintiffs' claim of emotional distress is not a "creature of statute," like fire suppression costs in section 13009, it is not barred by

---

5. The Ninth Circuit cited a number of California cases to support this assertion. *See Anderson*, 55 F.3d at 1384 n. 5 (citing *Rojo v. Kliger*, 52 Cal.3d 65, 276 Cal.Rptr. 130, 801 P.2d 373 (1990); *Orloff v. L.A. Turf Club*, 30 Cal.2d 110, 180 P.2d 321 (1947); *Hentzel v. Singer Co.*, 138 Cal.App.3d 290, 188 Cal.Rptr. 159 (1982); *Monroe v. E. Bay Rental Serv.*, 111 Cal.App.2d 574, 245 P.2d 9 (1952)).

sections 13007 and 13008. *See id.* at 1020, 244 Cal.Rptr. 507 (citation omitted).

## 2. Emotional Distress Damages Arising from Trespass

In California, trespass may be the result of intentional, reckless, negligent, or ultrahazardous activity. *See Armitage v. Decker*, 218 Cal.App.3d 887, 905, 267 Cal.Rptr. 399, 410–411 (Cal.Ct.App. 1990). In *Elton v. Anheuser–Busch Beverage Group, Inc.*, 50 Cal.App.4th 1301, 58 Cal.Rptr.2d 303, the California Court of Appeals held that a fire which defendants negligently permitted to escape onto plaintiffs' property could constitute a trespass. *Id.* The parties agree that the escaped fire that started at Lowden Ranch can constitute a trespass. However, the Government argues that Plaintiffs cannot recover emotional distress damages for trespass absent intentional wrongdoing. In contrast, the Plaintiffs claim that since they have pled trespass as a cause of action, they are entitled to recover for emotional distress resulting from that trespass.

Plaintiffs rely principally on *Herzog v. Grosso*, 41 Cal.2d 219, 259 P.2d 429 (1953) for the proposition that a plaintiff may recover emotional distress damages for a negligent trespass to property where no physical injury is suffered. In *Herzog,* plaintiff property owner sued his neighbor after the neighbor blocked plaintiff's access to an easement leading to a public road, thereby forcing plaintiff and his family to use a more dangerous path. The California Supreme Court held that "[o]nce a cause of action for trespass or nuisance is established an occupant of land may recover damages for annoyance and discomfort that would naturally ensue therefrom." *Herzog,* 41 Cal.2d at 225, 259 P.2d 429. The Court found that "the suffering caused by fear for the safety of the daughter and visitors was a natural consequence of defendant's conduct and an invasion of a protectible interest of an occupant of real property." *Id.* at 226, 259 P.2d 429. However, the defendant in *Herzog intentionally* regraded a road from his property to a public road, which resulted in a fill that blocked the plaintiffs' access to the public road. The defendant then created a new access which was narrow, steep, and dangerous. *See id.* at 222–23, 259 P.2d 429.

A careful parsing of the facts of many California cases dealing with the recovery of emotional distress damages, where the only injury is to property, reveal that California courts have only awarded emotional distress damages in cases either where the conduct is *continuous or ongoing or intentional.*[6]

---

**6.** *See Erlich v. Menezes*, 21 Cal.4th 543, 981 P.2d 978, 87 Cal.Rptr.2d 886 (1999) (one-time negligent breach of contract by contractor not sufficient to support award of emotional distress damages to homeowners); *Acadia, Cal., Ltd. v. Herbert*, 54 Cal.2d 328, 353 P.2d 294, 5 Cal.Rptr. 686 (1960) (emotional distress damages awarded for defendant's willful conduct in failing to supply water to plaintiffs); *Kornoff v. Kingsburg Cotton Oil Co.*, 45 Cal.2d 265, 288 P.2d 507 (1955) (plaintiff allowed to recover emotional distress damages against a cotton ginning plant which operated six months every year and whose operations resulted in large quantities of dust and dirt covering plaintiff's property); *Herzog, supra; Anderson v. Souza*, 38 Cal.2d 825, 243 P.2d 497 (1952) (ongoing conduct by private airport found to be a nuisance); *Green v. General Petroleum Corp.*, 205 Cal. 328, 270 P. 952 (1928) (involved ongoing conduct by an adjacent oil well); *Dauberman v. Grant,* 198 Cal. 586, 246 P. 319 (1926) (plaintiff entitled to recover for personal discomfort and annoyance caused by the ongoing nuisance of soot and smoke resulting from defendant's smoke stack); *Judson v. Los Angeles Suburban Gas Co.,* 157 Cal. 168, 106 P. 581 (1910) (plaintiff entitled to recover for annoyance caused by smoke, odors, and sounds emanating from neighboring gas works); *Yu v. Signet Bank/Virginia,* 69 Cal.App.4th 1377, 82 Cal. Rptr.2d 304 (Cal.Ct.App.1999), *cert. denied, Signet Bank/Virginia v. Yu,* 528 U.S. 965, 120 S.Ct. 400, 145 L.Ed.2d 312 (1999) (summary judgment against plaintiffs on cause of action

Two California appellate court cases have specifically addressed the distinction between recovery for emotional distress under a negligence theory versus recovery under a trespass theory. *See Gonzales v. Personal Storage, Inc.*, 56 Cal.App.4th 464, 65 Cal.Rptr.2d 473 (Cal.Ct.App.1997) and *Smith v. County of Los Angeles*, 214 Cal. App.3d 266, 262 Cal.Rptr. 754 (Cal.Ct.App. 1989).

In *Gonzales*, the plaintiff alleged emotional distress as a result of defendant storage company's negligently allowing two individuals (including one of whom claimed to be plaintiff) to carry away plaintiff's personal belongings in storage. The court allowed recovery for emotional distress specifically because the case involved the intentional tort of conversion. "[I]t is ... important to recognize that negligent damage to personal property, for which the law generally will not permit recovery of emotional distress damages ... is distinct from the conversion of personal property." *Gonzales*, 56 Cal.App.4th at 476, 65 Cal.Rptr.2d 473. In *Smith*, plaintiff homeowners sued the defendant county for neg-

ligently building roads in a hillside and issuing permits for additional homes, which contributed to landslides which made plaintiffs' residences unsafe. *See Smith*, 214 Cal.App.3d at 273–76, 262 Cal. Rptr. at 756–58. The county's building of roads and issuing permits for additional homes had been ongoing since the 1930's. The court in *Smith* allowed plaintiffs to recover emotional distress damages based upon the nuisance created by the county's actions. *See id.* at 288, 262 Cal.Rptr. at 766. Therefore, it is clear that *Gonzales* and *Smith* follow other California cases in which recovery for emotional distress damages for injury to property was not allowed unless the defendant's conduct was either continuous or intentional.

In this case, the Government admitted that its conduct in allowing the fire to escape was negligent and argues that no facts support an intentional tort or trespass. Importantly, Plaintiffs have not pled either an intentional tort or a trespass based on an intentional act. Rather, Plaintiffs pled a one-time occurrence that resulted from the Government's negligent

for negligent infliction of emotional distress against out-of-state credit card company was upheld because plaintiffs suffered economic injury only); *Lubner v. City of Los Angeles*, 45 Cal.App.4th 525, 53 Cal.Rptr.2d 24 (1996) (plaintiff artists not allowed to recover emotional distress damages for the one-time conduct of the city which negligently allowed a truck to crash into plaintiffs' home); *Zuniga v. Housing Auth. Of the City of Los Angeles*, 41 Cal.App.4th 82, 48 Cal.Rptr.2d 353 (1995) (some tenants of a housing authority were qualified to bring claims of emotional distress for deaths of close relatives in an arson fire); *Armitage v. Decker, supra*, (property owners could recover emotional distress resulting from neighbor's excavation of dirt and placement on their property and evidence that neighbor's conduct was intentional); *Sher v. Leiderman*, 181 Cal.App.3d 867, 226 Cal.Rptr. 698 (1986) (plaintiffs who owned a home with solar panels could not recover emotional distress damages against neighbors· because neighbors' trees blocked plaintiffs' access to

light); *Cooper v. Superior Court of Los Angeles County*, 153 Cal.App.3d 1008, 200 Cal.Rptr. 746 (1984) (homeowner, whose property was damaged when defendants negligently allowed tractor to roll onto homeowner's property, was barred from recovery of emotional distress damages); *Smart v. City of Los Angeles*, 112 Cal.App.3d 232, 169 Cal.Rptr. 174 (Cal.Ct.App.1980) (plaintiff, who owned property adjacent to airport, could recover damages for annoyance and discomfort under nuisance theory); *Sturges v. Charles L. Harney, Inc.*, 165 Cal.App.2d 306, 331 P.2d 1072 (Cal. Ct.App.1958) (plaintiff homeowners allowed to recover for annoyance and discomfort from nuisance posed by defendant's excavation activities which caused rocks to slide down the hill onto plaintiffs' homes); *Alonso v. Hills*, 95 Cal.App.2d 778, 214 P.2d 50 (Cal.Ct.App. 1950) (plaintiff homeowners allowed to recover for emotional distress from nuisance caused by defendant rock quarry's blasting of rocks).

conduct. Because the Government's conduct was neither intentional, ongoing, or continuous, nor can it be characterized as akin to a nuisance, Plaintiffs cannot recover emotional distress damages based solely on trespass.

However, Plaintiffs argue that they are entitled to emotional distress damages because the conduct of the Burn Boss, the BLM employee who had decided to conduct the prescribed burn, amounted to "willful misconduct" because he knew of indicators which militated against conducting the burn but decided to conduct the burn anyway.[7] To support their contention, Plaintiffs cite an investigatory internal report commissioned by the BLM to determine the circumstances of the escaped fire. *See* Mem. of P. & A. in Supp. of Pls.' Opp'n at Ex. A. Plaintiffs contend that this investigatory report shows that BLM personnel violated a number of internal agency procedures in conducting the fire and constituted willful disregard of the danger posed by the fire.

However, there is a qualitative difference between intentional and negligent conduct. Even assuming that the Burn Boss made a decision to proceed with the burn in spite of contrary indications, as Plaintiffs allege, the record does not indicate that the Burn Boss' behavior amounted to intentional conduct. The Plaintiffs do not allege that the Burn Boss intended to burn neighboring homes and property. Nor can it be said, based on the record, that the Burn Boss recklessly proceeded with the burn, heedless to any danger it might pose. Even if Plaintiffs' characterization of events is correct, the most that can be shown is that the Burn Boss was

grossly negligent, but did not act intentionally.

### 3. Emotional Distress Damages arising from Negligence

■ In California, " '[t]he negligence causing of emotional distress is not an independent tort but the tort of negligence.' " *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.*, 48 Cal.3d 583, 588, 770 P.2d 278, 257 Cal.Rptr. 98 (1989) (citations omitted). "The traditional elements of duty, breach of duty, causation, and damages apply." *Id.* (citations omitted). There are three theories of recovery for emotional distress in negligence cases: (1) parasitic damages; (2) bystander; and (3) direct victim.

### A. Parasitic damages

■ A plaintiff may recover emotional distress damages in a negligence action as parasitic to damages for physical injury. Put another way, a plaintiff who suffers physical injury as a result of negligence may also recover emotional distress damages resulting from fear of future harm attributable to the physical injury. *See Potter v. Firestone Tire and Rubber Co.*, 6 Cal.4th 965, 981, 863 P.2d 795, 25 Cal. Rptr.2d 550 (1993). Physical injury for purposes of parasitic emotional distress damages requires actual harm. *See Macy's California, Inc. v. Superior Court of Solano County*, 41 Cal.App.4th 744, 756 48 Cal.Rptr.2d 496, 504 (Cal.Ct.App.1995)

■ Plaintiffs contend that they have suffered physical injury, including physical manifestations of stress and depression. However, even assuming that Plaintiffs do suffer these physical symptoms, Plaintiffs'

---

**7.** The concept of "willful misconduct" will be dealt with in three contexts in the court's opinion: trespass, negligence, and valuation of personal property based on statute. The court recognizes that it is difficult to deal with willful misconduct in the abstract because it can be interpreted differently based on whether the context is tort or statute. Therefore, it is necessary to address willful misconduct separately in these three contexts rather than in one section.

emotional distress is not "parasitic" to these physical symptoms. It is the opposite. The physical symptoms are "parasitic" to the Plaintiffs' emotional distress. Such facts cannot support a claim for emotional distress damages. Absent the physical injury which serves as the host for parasitic emotional distress, the necessary premise of the claim of emotional distress is absent. Further, to allow parties to claim parasitic emotional distress damages based on physical manifestations of emotional stress itself would be an open invitation to speculation and exaggeration. The court is reluctant to take that step.

### B. Bystander

■ The California Supreme Court has stated, "[t]he 'bystander' cases ... address 'the question of duty in circumstances in which a plaintiff seeks to recover damages as a percipient witness to the injury of another' ... [B]ystander liability is premised upon a defendant's violation of a duty not to negligently cause emotional distress to people who observe conduct which causes harm to another." *Burgess v. Superior Court of Los Angeles County*, 2 Cal.4th 1064, 1072, 831 P.2d 1197, 9 Cal. Rptr.2d 615 (1992).

In *Thing v. La Chusa*, 48 Cal.3d 644, 771 P.2d 814, 257 Cal.Rptr. 865 (1989), the California Supreme Court enunciated the requirements for recovery of emotional distress, absent physical injury, in "bystander" cases: the plaintiff must be (1) closely related to the injury victim; (2) present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim; and (3) suffer emotional distress as a result, beyond that which would occur in a disinterested witness. *See Thing*, 48 Cal.3d at 647, 257 Cal.Rptr. 865, 771 P.2d 814.

■ Since the Plaintiffs are immediate family members, they satisfy the first *Thing* requirement. However, they do not satisfy the second. Obviously, no Plaintiffs witnessed anyone suffer physical injury as a result of the fire because no one was physically injured as a result of the fire. Even assuming that Plaintiffs were fearful fellow family members might suffer physical injury from the fire, this *generalized* fear is not compensable.

In *Scherr v. Las Vegas Hilton*, 168 Cal. App.3d 908, 214 Cal.Rptr. 393 (1985), the court held that a plaintiff could not recover emotional distress under a "bystander" theory due to seeing on television that a fire had broken out at the hotel where her husband was staying. The court stated:

> Plaintiff alleges she knew her husband was somewhere in the hotel at the time of the fire, but the element of certainty of injurious impact ... is missing here. Put simply, it is the contemporaneous perception of the infliction of injury on a closely related person that causes actionable emotional shock to a third party bystander....

*Scherr*, 168 Cal.App.3d at 910, 214 Cal. Rptr. 393.

Similarly, Plaintiffs in this case possibly suffered stress at the thought that the escaped fire might injure a close relative. However, since Plaintiffs did not see an injury-producing event, much less witness injury to a close relative, Plaintiffs cannot recover emotional distress under a "bystander" theory.

### C. Direct Victim

■ The "direct victim" theory was first articulated by the California Supreme Court in *Molien v. Kaiser Foundation Hospitals*, 27 Cal.3d 916, 616 P.2d 813, 167 Cal.Rptr. 831 (1980). Under the "direct victim" theory, the applicable duty is not the general duty not to cause emotional distress to bystanders who observe harm to others. In "direct victim" cases, the

duty owed is a duty owed by the specific defendant to the specific plaintiff. This duty may be "assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two." *Marlene F.*, 48 Cal.3d at 590, 257 Cal.Rptr. 98, 770 P.2d 278. *See also Burgess*, 2 Cal.4th at 1073, 9 Cal. Rptr.2d 615, 831 P.2d 1197. In "direct victim" cases, the limits set forth in *Thing, supra*, are not applicable. *Burgess*, 2 Cal.4th at 1073, 9 Cal.Rptr.2d 615, 831 P.2d 1197. "Rather, well-settled principles of negligence are invoked to determine whether all elements of a cause of action, including duty, are present in a given case." *Id.*

The Government argues that a pre-existing relationship is necessary, and, aside from the Plaintiffs' United States citizenship, no pre-existing relationship exists between the parties. Plaintiffs dispute that a pre-existing relationship is necessary under the "direct victim" theory.

In *Marlene F.*, the mothers of sons who had been sexually molested by their therapist were allowed to recover against the therapist because a relationship existed between the therapist and the mothers since the entire family had entered counseling. *Marlene F.*, 48 Cal.3d at 590, 257 Cal.Rptr. 98, 770 P.2d 278. In *Burgess*, a mother was allowed to recover emotional distress damages against an obstetrician resulting from her baby's injuries during delivery. *Burgess*, 2 Cal.4th at 1074, 9 Cal.Rptr.2d 615, 831 P.2d 1197. The *Burgess* court stated, "A cause of action to recover damages for negligently inflicted emotional distress will lie ... in cases where a duty arising from a pre-existing relationship is negligently breached."

However, a closer reading of *Burgess* and *Marlene F.* reveals that they do not require a pre-existing relationship under the "direct victim" theory. Both *Burgess* and *Marlene F.* state that the duty imposed by the plaintiff may be (1) assumed by the defendant; (2) imposed as a matter of law; or (3) arise from a relationship between the two. In *Marlene F.*, the court stated, "Damages for severe emotional distress ... are recoverable in a negligence action when they result from the breach of a duty owed the plaintiff that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two." *Marlene F.*, 48 Cal.3d at 590, 257 Cal.Rptr. 98, 770 P.2d 278. In *Burgess*, the court stated, " ... the label 'direct victim' arose to distinguish cases in which damages for serious emotional distress are sought as a result of a breach of duty owed the plaintiff that is 'assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two.'" *Burgess*, 2 Cal.4th at 1073, 9 Cal.Rptr.2d 615, 831 P.2d 1197 (quoting *Marlene F.*, 48 Cal.3d at 590, 257 Cal.Rptr. 98, 770 P.2d 278).

The focus on a pre-existing relationship in *Burgess* is explainable given the physician-patient context of the case.[8] Howev-

---

8. *See Wooden v. Raveling*, 61 Cal.App.4th 1035, 1039–40, 71 Cal.Rptr.2d 891, 893–894 (1998) for a discussion of how one California appellate court discussed the misreading of *Burgess* by a second appellate court (*Bro v. Glaser*, 22 Cal.App.4th 1398, 27 Cal.Rptr.2d 894 (Cal.Ct.App.1994)). The *Wooden* court noted that the *Bro* court's finding that a pre-existing relationship was necessary in "direct victim" cases was an erroneous reading of

*Burgess*. In discussing *Burgess*, the *Wooden* court stated:

> Given the context of *Burgess*, the reason for the Supreme Court's focus on pre-existing relationship as the source of the defendant doctor's duty is apparent. Those were the facts of *Burgess*. Nowhere does *Burgess* expressly state that a pre-existing relationship is the *only possible* origin for the necessary duty. To the contrary, *Burgess* identified three possible sources for

er, *Burgess* does not stand for the proposition that a pre-existing relationship .is a prerequisite to recover under the "direct victim" theory.[9]

Given that a pre-existing relationship is not required to recover under the "direct victim" theory, this court must ask whether the Government owes a duty to the Plaintiffs, what is the source of that duty, and does that duty support the award of emotional distress damages. Plaintiffs argue the duty is statutory in nature.

The question of what duty is owed to plaintiffs in a mass tort context, as presented in this case, was addressed in *Potter v. Firestone Tire and Rubber Co.*, 6 Cal.4th 965, 863 P.2d 795, 25 Cal.Rptr.2d 550 (1993). In *Potter*, the California Supreme Court considered the duty owed residents living near a landfill by a tire manufacturer that dumped toxic waste materials at the landfill. The residents claimed they suffered emotional distress as a result of their fear of contracting cancer due to their exposure to the toxic materials. The court found that the defendant violated a statutory duty imposed upon it by California Water Code § 13350(a) and held that:

> Firestone did violate a duty imposed on it by law and regulation to dispose of

toxic waste only in a class I landfill and to avoid contamination of underground water. The violation led directly to plaintiffs' ingestion of various known and suspected carcinogens, and thus to their fear of suffering the very harm which the Legislature sought by statute to avoid. Their fear of cancer was proximately caused by Firestone's unlawful conduct which threatened serious physical injury.

*Id.* at 985, 25 Cal.Rptr.2d 550, 863 P.2d 795. The court emphasized that "a breach of duty must threaten physical injury, not simply damage to property or financial interests." *Id.* In *Erlich v. Menezes, supra,* the California Supreme Court reiterated the notion that recovery for emotional distress in negligence cases requires breach of duty that threatens physical injury, not just injury to property. In *Erlich,* the court denied plaintiffs recovery for emotional distress for negligent breach of home construction contract because the defendant homebuilder's negligent breach resulted only in damage to their property and the plaintiffs could have avoided any threat of harm. *See Erlich,* 21 Cal.4th at 555–6, 87 Cal.Rptr.2d 886, 981 P.2d 978.

■ In this case, the Government had a statutory duty to conduct its prescribed

> the necessary duty, including a duty imposed by law.

*Id.* at 1039–40, 71 Cal.Rptr.2d 891 (emphasis in original).

9. The Government also cites *Martin v. United States*, 984 F.2d 1033 (9th Cir.1993) as holding that a pre-existing relationship is required in order to recover under a direct victim theory. In *Martin,* the Ninth Circuit affirmed the district court's ruling that a mother and sister of a six-year-old girl who had been abducted and raped due to negligent supervision provided by a government-operated day care center could not recover emotional distress under a direct victim theory. *See id.* The court based its ruling on the fact that the day care center did not owe a duty to protect the mother or sister from emotional distress arising from harm to the girl. *See id.* at 1037. "*Huggins [v. Longs Drug Stores California, Inc.*, 11 Cal.App.4th 550, 14 Cal.Rptr.2d 77 (1992)] is therefore in line with *Burgess, Christensen [v. Superior Court*, 54 Cal.3d 868, 2 Cal.Rptr.2d 79, 820 P.2d 181 (1991)], and *Marlene F.,* requiring a relationship between the plaintiff and defendant which gives rise to a duty to avoid the tort causing injury." *Martin,* 984 F.2d at 1037. The *Martin* court's discussion of a pre-existing relationship, therefore, was in the context of what type of duty, if any, owed by the day care center to the mother and sister. The Ninth Circuit did not hold that a pre-existing relationship is a prerequisite to recovery for emotional distress under a direct victim theory.

fire in such a way as to minimize the risk of harm to persons and property in the surrounding area.[10] While the California statute which imposed this duty was undoubtedly concerned with the risk of harm to the property posed by a prescribed fire, the duty imposed by these statutes was also meant to protect against harm of physical injury posed by a prescribed fire.

However, as a result of warnings issued by law enforcement officers, Plaintiffs avoided the threat of specific physical injury. Plaintiffs were able to evacuate their residence *before* the fire was in danger of reaching them. This is not a case where Plaintiffs escaped from a burning building. Rather, Plaintiffs were warned ahead of time to prevent the possibility of such a specific threat. If any of the Plaintiffs were ever at risk of physical injury at all, it was as a result of their own affirmative decisions to return to the scene.

This case is in contrast to *Potter.* In *Potter,* the court found that defendant's disposition of toxic waste in unauthorized areas led to contamination of underground water, which "led directly to plaintiffs' ingestion of various known and suspected carcinogens, and thus to their fear of suffering the very harm which the Legislature sought by statute to avoid." *Potter,* 6 Cal.4th at 985, 25 Cal.Rptr.2d 550, 863 P.2d 795. The *Potter* court further found "[the plaintiffs'] fear of cancer was proximately caused by Firestone's unlawful conduct which *threatened serious physical injury.*" *Id.* (emphasis added).

The defendant in *Potter* argued that the plaintiffs should not be allowed to recover because fear of cancer claims are linked to a future harm that may or may not materialize and that such claims raise concerns about speculation and uncertainty. *Potter,* 6 Cal.4th at 988, 25 Cal.Rptr.2d 550, 863 P.2d 795. The court recognized that "all of us are exposed to carcinogens every day." *Id.* at 990, 25 Cal.Rptr.2d 550, 863 P.2d 795. Therefore in order to recover emotional distress damages, the court ruled that the plaintiffs "must do more than simply establish knowledge of a toxic ingestion or exposure and a significant increased risk of cancer. The plaintiff must further show that based upon reliable medical or scientific opinion, the plaintiff harbors a serious fear that the toxic ingestion or exposure was of such magnitude and proportion as to likely result in the feared cancer." *Id.* at 997, 25 Cal.Rptr.2d 550, 863 P.2d 795. The *Potter* court found that a plaintiff's fear of physical injury (i .e. fear of developing cancer) must be based on a specific threat of physical injury and that there must be a reasonable basis to believe that the *physical injury will likely result.*

In this case, the Plaintiffs did not encounter a specific threat of personal injury since, upon being warned ten minutes before the fire reached the house, they evacuated the premises. Rather, the most that can be said is that Plaintiffs faced an avoidable risk of harm. This avoidable risk, not actualized, is not sufficient to allow Plaintiffs to recover emotional distress damages under a "direct victim" theory of negligence. Plaintiffs have not sat-

---

**10.** California has enacted statutes which specifically impose certain duties on persons conducting prescribed burns. *See* Cal.Pub.Res. Code §§ 4421–4426 (Cal.Pub.Res.Code § 4424 has been repealed). For example, Cal.Pub.Res.Code § 4422 states as follows:

A person shall not do any of the following:
(a) Willfully or knowingly allow fire to burn uncontrolled on land which he owns or controls, or to escape to the lands of any person other than that of the owner.
(b) Allow any fire kindled or attended to by him to escape from his control or to spread to the land of any person other than from the land from which the fire originated. *Id.*

isfied the *Potter* standard. It is true that the Lowden Ranch fire escaped and did, ultimately, come onto Plaintiffs' property and destroyed Plaintiffs' home and possessions. No one would argue that seeing one's home and earthly possessions go up in flames is a shattering experience. However, the ten-minute warning allowed Plaintiffs adequate time to escape the specific threat of physical injury which would have provided the reasonable basis to believe that physical injury would likely result.

### D. "Willful Misconduct"

Plaintiffs argue that they are entitled to recover emotional distress damages because the Government's conduct was "willful misconduct." Plaintiffs contend that the actions of the Burn Boss, the Government's employee supervising the prescribed fire, were willful misconduct because he (1) had actual or constructive knowledge of the peril the fire posed to the community; (2) had actual or constructive knowledge that injury was the probable result of the danger; and (3) consciously failed to act to avoid known dangers. Plaintiffs argue that the Burn Boss deliberately decided to conduct the fire in total disregard for the safety of the community.

In this second context—negligence—the concept of willful misconduct is used in two ways. The first way is in connection to the rule of contributory negligence. Prior to 1975, California operated under a contributory negligence regime in which a plaintiff was barred from recovery if she was negligent in any way. *See Southern Pacific Transportation Co. v. California,* 115 Cal.App.3d 116, 120, 171 Cal.Rptr. 187, 190 (Cal.Ct.App.1981). However, to protect against the harsh operation of the rule when a plaintiff was only slightly at fault, an exception to the absolute bar of contributory negligence was developed to allow a negligent plaintiff to recover from a defendant whose negligence was characterized

as "willful." This exception was created so that " '. . . a serious wrongdoer should not escape liability because of the less serious or even perhaps trivial misstep of his victim.' " *Id.* (citations omitted).

In 1975, California adopted the comparative negligence rule, which apportions liability for damages in accordance with the fault of the parties. *See Li v. Yellow Cab. Co.,* 13 Cal.3d, 804, 825, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975). With the adoption of the comparative negligence rule, California courts no longer categorize "willful misconduct" as a tort separate from negligence. As a result, " . . . the need for a separate category of negligence identified as willful misconduct, which was designed to alleviate the inequity of the all-or-nothing contributory negligence rule, has disappeared with the adoption of a rule of comparative negligence." *Southern Pacific,* 115 Cal.App.3d at 121, 171 Cal.Rptr. at 190–191. *See also Zavala v. Regents of the Univ. of California,* 125 Cal.App.3d 646, 650, 178 Cal.Rptr. 185 (Cal.Ct.App. 1981); and *Sorensen v. Allred,* 112 Cal. App.3d 717, 725, 169 Cal.Rptr. 441, 446 (Cal.Ct.App.1980).

The second way in which "willful misconduct" is used in the tort context of negligence is to support the award of punitive damages. " 'In order to justify an award of punitive damages . . . [in negligence cases], the plaintiff must establish that the defendant was aware of the probable dangerous consequences of his conduct, and that he willfully and deliberately failed to avoid those consequences.' " *Bell v. Sharp Cabrillo Hospital,* 212 Cal.App.3d 1034, 1044, 260 Cal.Rptr. 886, 891 (Cal.Ct. App.1989). *See also Woolstrum v. Mailloux,* 141 Cal.App.3d Supp. 1, \*5–\*6, 190 Cal.Rptr. 729, 731–2 (Cal.App.Dep't Super.Ct.1983). Since the FTCA expressly disallows recovery for punitive damages, the concept of "willful misconduct" as sup-

porting punitive damages is not applicable to this case.

Therefore, Plaintiffs cannot recover emotional distress damages on the theory that the Government's conduct constitutes "willful misconduct." [11]

As discussed under the trespass section above, even if Plaintiffs' characterization of the Burn Boss' behavior is correct, the record submitted by the parties shows that his conduct amounts to gross negligence, at most, not intentional conduct.

### 5. Proper Valuation of Personal Property

■ The general rule is the value of property lost or destroyed is determined by its market value at the time and place of the tort. *See* Cal.Civ.Code § 3354. There is a limited exception to this rule for property with a peculiar value. California Civil Code section 3355 provides that one who had notice of the peculiar value of the

property, or who acted willfully in causing the loss or injury of the property, may be liable to the plaintiff for the peculiar value of the item. *See* Cal.Civ.Code § 3355.

To establish that section 3355 of the Civil Code is applicable to the present action, Plaintiffs must show either (1) the Government had notice of the value of the items in plaintiffs' home, or (2) the Government acted willfully in setting the fire. *See id.* As to the first part, it does not appear, nor do Plaintiffs argue, the Government had notice of the peculiar value of plaintiffs items. Rather, Plaintiffs again argue that the "willful misconduct" of the Burn Boss entitles them to recover, this time, specifically under section 3355.

Section 3355 does not provide a definition of a "willful" act. Rather, the definition must be found in common law. One California appellate court has defined willfulness as when an " 'actor has *intentionally* done an act of an unreasonable char-

---

**11.** Since the Plaintiffs in this case have not pled that the Government committed an intentional tort (their complaint lists negligence and trespass based on negligent behavior as their causes of action), this court does not address "willful misconduct" in the context of intentional tort.

The Government argues extensively that Plaintiffs cannot prove willful misconduct as a matter of fact. *See* Reply Mem. in Supp. of Def.'s Mot. at 3–7. Plaintiffs devote their entire Reply Memorandum to showing that they can prove willful misconduct as a matter of fact. Since this court concludes that Plaintiffs cannot plead willful misconduct as a matter of law, it is not necessary to decide whether they could prove willful misconduct as a matter of fact.

This court's conclusion is not affected by the two Ninth Circuit and one Northern District cases cited by Plaintiffs since these cases are inapplicable. *Rost v. United States*, 803 F.2d 448 (9th Cir.1986) involved the defendant's liability to a national forest visitor who was impaled on an extending piece of steel on a road closure gate. Liability was premised on California's recreational use statute, codified at Cal.Civ.Code § 846, which provided landowners substantial immunity for liability

from injuries incurred by those using the land for recreational use, but which provided an exception where the landowner's conduct constituted "willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity." *Id.* at 450. Both *Termini v. United States*, 963 F.2d 1264 (9th Cir.1992) and *Ware v. United States*, 1994 WL 46739 (N.D.Cal.1994) also dealt with the same section of the California Code. Therefore, *Rost, Termini,* and *Ware,* dealt with the government's liability under a statute that explicitly provided for liability for "willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity." As the government pointed out in oral argument, a showing of willful misconduct was a necessary component of plaintiff's burden in those cases in order to avoid the broad immunity defense, and, recover compensatory damages under the recreational use statutes. In contrast, Plaintiffs, here, are suing under common law theories of negligence and trespass, not under a California statute, and willful misconduct is not a component of either negligence or trespass based on negligence. *Rost, Termini,* and *Ware* are inapplicable.

acter in disregard of a risk know to him or so obvious that he must ... have been aware of it, and so great as to make it highly probable that harm would follow.'" *Morgan v. S. Pac. Trans. Co.*, 37 Cal. App.3d 1006, 1011, 112 Cal.Rptr. 695 (1974) (quoting Prosser, Law of Torts § 34, 185 (4th ed.1971)) (emphasis added). According to the California Supreme Court, a wrongful act done willfully is more severe than one done negligently because:

> [u]nlike negligence, which implies a failure to use ordinary care, and even gross negligence, which connotes such a lack of care as may be presumed to indicate a passive and indifferent attitude toward results, willful misconduct is not marked by a mere absence of care. Rather, it " 'involves a more positive intent actually to harm another or to do an act with a positive, active and absolute disregard of its consequences.' "

*Calvillo–Silva v. Home Grocery*, 19 Cal.4th 714, 729, 80 Cal.Rptr.2d 506, 968 P.2d 65 (1998) (citations omitted).

■ Intent for negligence does not rise to the level of intent for a willful act. Negligence merely requires a lack of ordinary care, while a willful act requires the wrongdoer to have known the risk, but intentionally acted anyway, disregarding the consequences. *See id.* at 729, 80 Cal. Rptr.2d 506, 968 P.2d 65; *Morgan*, 37 Cal.App.3d at 1011, 112 Cal.Rptr. 695. As noted previously, Plaintiffs' case is premised on negligence and negligent trespass causes of action. Plaintiffs have not pled any causes of action for intentional torts. Yet as the California Supreme Court made clear in *Calvillo–Silva*, the intent described by "willful misconduct" is more than mere negligence. Rather it is a "positive intent actually to harm another." *Calvillo–Silva*, 19 Cal.4th at 729, 80 Cal. Rptr.2d 506, 968 P.2d 65. Therefore, section 3355 does not apply to the present action as a matter of law. Moreover, as has been raised in the trespass and negligence context, even assuming Plaintiffs' characterization of the Burn Boss' conduct is accurate, it does not rise to the level of intentional tort.

Furthermore, even assuming Plaintiffs could prove that the Burn Boss acted willfully or wantonly when the fire was set, Plaintiffs must still have a rational basis for the peculiar valuation of their property.[12] *See Willard v. Valley Gas & Fuel Co.*, 171 Cal. 9, 15–16, 151 P. 286 (1915), *overruled in part by, Showalter v. Western Pac. R. Co.*, 16 Cal.2d 460, 106 P.2d 895 (1940).[13]

Plaintiffs argue that if the court holds that they are only entitled to the market value of their lost property, they are entitled to recover damages for the items without a market value, such as little league trophies. Plaintiffs maintain that this value should be determined through testimony regarding the items' sentimental

---

**12.** This is illustrated by the appellate court case, *King v. Karpe*, 170 Cal.App.2d 344, 338 P.2d 979 (1959). In that case, the court affirmed the plaintiff's recovery for the peculiar value of a cow destroyed at the order of the defendant's veterinarian. *Id.* at 351, 338 P.2d 979. This recovery for the peculiar value of the cow was based on the Civil Code's allowance for recovery when a defendant knows the peculiar value of the injured property beforehand. *See* Cal.Civ.Code § 3355. However, the factors listed for recovery were the cow's potential as a breeding cow, her ability to produce more calves, and the quality of her previous offspring. *King*, 170 Cal.App.2d at 348–49, 338 P.2d 979. The plaintiff did not recover for the sentimental value of the cow, but rather her rationally determined value as a breeder had she not been destroyed.

**13.** In *Showalter*, the court held that *Willard* and other cases misstated the test as to whether a statement is *res gestae*. *See Showalter*, 16 Cal.2d at 465, 106 P.2d at 898.

value, as well as other factors such as the difficulty and expense the Plaintiffs had in acquiring the property.

The Government states that Plaintiffs' recovery is limited to the market value of items destroyed. The Government argues that the value of items with no market value must be ascertained in some rational way, and that since Plaintiffs have not provided a rational basis for determining the value of such items, they are limited to nominal damages.

## A. Property with a determinable market value.

 For damage to property with a determinable market value, a plaintiff is limited, in his or her recovery, to that value only. The value of the item lost is determined by "the price at which he [or she] might have bought an equivalent thing in the market" at the same time and place the injury occurred. Cal.Civ.Code § 3354. If Plaintiffs could have purchased items equivalent to those destroyed by the fire, that is the limit of their recovery for damage to that property.[14]

## B. Property with no market value.

 For items with no market value, Plaintiffs are entitled to recover the rationally determined value of those items. *Willard*, 171 Cal. at 15–16, 151 P. 286. This is true of items that are "so unusual in [their] character that market value cannot be predicated of it, its value, or plaintiff's damages". *Id.* at 16, 151 P. 286. Testimony regarding the sentimental value of the property, or any speculative valuations of the property must necessarily be excluded. The concurring opinion in *Willard* suggests that considerations such as "the difficulty and expense to which plaintiff was put in acquiring the property" and "the nature and character of [its] use" are rational means by which to determine the value of the property. *Id.* at 17, 151 P. 286 (Sloss, J., concurring).

In *Zvolanek v. Bodger Seeds*, 5 Cal. App.2d 106, 42 P.2d 92 (1935), where there was no market value for a lost crop, the court ruled that testimony regarding the method of raising the crop and the time expended in such work was properly admitted. *Id.* at 109, 42 P.2d 92. The testimony related to the loss of the crop, so no error was committed by admitting such testimony. *Id.* In *King v. Karpe*, similar testimony regarding the value for breeding purposes of a cow mistakenly destroyed was properly admitted. *King v. Karpe*, 170 Cal.App.2d 344, 348–49, 338 P.2d 979 (Cal.Ct.App.1959). The testimony in *King* serves as an example of a rational basis for determining value. *Id.* Similarly, personal memorabilia is subject to a rational, not a sentimental, valuation. Restatement (Second) of Torts § 911(e) (1979). Therefore, a plaintiff can recover more than nominal damages for items with no market value. However, the valuation of those items cannot be based on sentiment, rather some

---

**14.** *See Hand Elecs., Inc. v. Snowline Joint Unified Sch. Dist.*, 21 Cal.App.4th 862, 870–71, 26 Cal.Rptr.2d 446 (1994) (holding that the measure of damages should be either the depreciation in market value of the item or the cost of its repair); *Pelletier v. Eisenberg*, 177 Cal.App.3d 558, 567, 223 Cal.Rptr. 84 (1986) (holding that artist's recovery limited to fair market value of destroyed paintings); *People v. S. Pac. Co.*, 139 Cal.App.3d 627, 634–35, 188 Cal.Rptr. 913 (1983) (holding that plaintiff was entitled to recover for fair market value of property and cost of restoring timberland because of damage to trees and soil); *Raven's Cove Townhomes, Inc. v. Knuppe Dev. Co.*, 114 Cal.App.3d 783, 802, 171 Cal.Rptr. 334 (1981) (holding that proper measure of damages for remedying defects in landscaping and repairing of townhouses was the cost of repair, along with the value of lost use); *Lane v. Spurgeon*, 100 Cal.App.2d 460, 463–64, 223 P.2d 889, 891 (1950) (holding that the lodge owners' recovery for damage to their property was limited to the difference in value of the property immediately before and after the injury).

logical framework must be used. *See Willard* 171 Cal. at 15–16, 151 P. 286.

In this case, in order to recover more than nominal damages for items with no market value, such as little league trophies, year books, and so forth, Plaintiffs must provide a rational basis for determining their value. The sentimental or subjective value placed on such items is not permitted.

### CONCLUSION

Defendants' motion for summary adjudication is GRANTED and Plaintiffs' motion for summary adjudication is DENIED.

IT IS SO ORDERED.